# Staunton.

AMANDA GRIFFIN v. FLOYD TOMLINSON, ET ALS.

September 12, 1930.

Absent, Prentis, C. J., and Holt, J.

*Will H. Nickels*, for the appellant.

*S. H. Bond*, for the appellees.

CAMPBELL, J., delivered the opinion of the court.

Appellees, who are heirs at law of James Tomlinson, deceased, instituted this suit against appellant and the remaining heirs, for the partition of certain lands containing approximately three hundred acres, of which the decedent died seized and possessed. Appellant filed her answer to the bill of complaint, and by decree entered on the 31st day of July, 1929, it was adjudged that the lands of James Tomlinson, deceased, be "partitioned into nine parts as nearly equal as possible, having reference to quantity

and quality, value, ways and water." Three commissioners were appointed to make partition of said lands, and on December 18, 1929, they filed a report in which it appears that appellant was assigned seventy-six and one-ninth acres of land without any improvements thereon. Appellant duly filed nine exceptions to the report of the commissioners. In support of the exceptions appellant filed sundry affidavits.

The grounds alleged against a confirmation of the report are that the lands assigned appellant lie remote from a public road; that the commissioners failed to provide a right of way for appellant to the public road; that the land assigned is devoid of building and improvements; that the land is remote from other lands owned by appellant; that appellant had expended upon the "Home Place" where she was residing at the time partition was decreed, large sums of money which were not taken into consideration by the commissioners; that appellant was entitled to have her share of land assigned her out of the home tract, provided same could be equitably done; that the land assigned her was of little value, to-wit, of the value of $300.00, while the lands assigned to her brothers were of the value of $600.00 and $1,500.00 respectively; "that said commissioners while making partition of the lands of James Tomlinson went to the homes of the other heirs of James Tomlinson and spent the night with them, ate with them and consulted with them as to where they wanted their shares laid off to them * * *."

Appellees, in support of confirmation of the report of the commissioners, filed numerous affidavits tending to show that the partition was fair and equitable as to value, but did not file any affidavits denying the serious allegations that the commissioners were entertained by appellees during the progress of the partition, and that no right of way was designated by which appellant could have free access to the public road. When the cause was reached for final

disposition the court entered a decree confirming the report of the commissioners, and it is that decree which is the subject of this appeal.

The right of tenants in common, joint tenants and co-parceners to seek the aid of a court of equity to compel a partition of land is conferred by section 5279 of the Code, 1919. The proceeding for a partition may be instituted by petition or bill, but the usual method of procedure is by bill in equity, and the usual practice is for the court to appoint commissioners who, after being duly sworn, may view the land to be partitioned, employ a competent surveyor to make a survey thereof, and examine witnesses as to value, ways and any other matters pertaining to an equitable partition. They should then make their report, in writing, to the court, generally filing therewith a survey and plat clearly designating the metes and bounds of the several allotments. *Phillips* v. *Dulany*, 114 Va. 684, 77 S. E. 449.

While the court is the final arbiter in matters of partition, the commissioners should be selected with due regard to their intelligence and character, as the same principles which govern the award of arbitrators and the verdict of a jury are applicable to some extent to the report of the commissioners. Due to the fact that they are, for the time being, officers of the court, great reliance is placed on their discretion and acts, and full weight should be given their report, if it comes to the court without the taint of partiality or undue influence. But when it is made to appear by exceptions to the report, or by affidavits made a part of the record, that their conduct has been possibly influenced by the acts of the litigants, however innocently exerted, then it is the duty of the court to reject the report and either appoint other commissioners to make partition or proceed in some other manner warranted by law.

So far as we have been able to ascertain, almost all of the courts and text writers are agreed that for reasons of

public policy the verdict rendered by a jury, any of whose members has been treated or entertained by one having an interest in the litigation, must be set aside. The same rule applies to the acts of agents or attorneys of the parties litigant. In Virginia the rule has been extended so that it is now made applicable to the report of commissioners in condemnation proceedings. Dealing with a situation where it appeared that a litigant had treated, fed and entertained commissioners appointed in a condemnation proceeding, this court, in *New River, etc., Ry. Co.* v. *Honaker,* 119 Va. 641, 89 S. E. 960, 964, Ann. Cas., 1917C, 132, held that it was error to confirm the report of the commissioners in view of such a revelation. Judge Sims, speaking for the court, said:

"We feel that the maintenance of public confidence in the integrity of reports of commissioners, acting under the statute and by appointment of court in the assessment of damages in condemnation proceedings, who are in truth in effect performing the duties of a jury in an *ad quod damnum* proceeding, is of such transcendent importance that the same rule applicable to juries should be applied; and that such reports should be kept free from the suspicion that the commissioners may have been influenced by any party to the proceeding, whether plaintiff or defendant, by furnishing the commissioners, or any of them who make such reports, with lodging or food or liquor, whether such influence was sought to be exercised or not, or in fact existed."

In *Virginia-Western Power Co.* v. *Kessinger,* 122 Va. 146, 94 S. E. 186, 190, this is said: "These commissioners practically discharge the duties of juries, as we had occasion to remark in effect in the case of *New River, etc., Ry. Co.* v. *Honaker, supra,* and every precaution should be taken by such commissioners and by the courts to preserve public confidence in their findings. Neither they, however honorable men they may be, by careless and thoughtless disregard

of the proprieties, nor others, whether acting designedly or with the purest motives, should be allowed to so conduct themselves in any way as to cast suspicion upon the integrity of the commission or upon its decisions." See also *Charles* v. *Big Sandy Ry. Co.*, 142 Va. 528, 129 S. E. 384.

The rule that applies when jurors and condemnation commissioners are entertained or shown undue courtesies by those interested in the litigation, is the same rule which should be applied when attention of the court is called to similar indiscretions or misconduct of commissioners in a partition suit.

In view of what has been said, which leads to a reversal of the decree entered by the circuit court, it is unnecessary to enter upon a discussion of the remaining assignments of error, except to say that we are of opinion that the court erred in refusing to sustain the exception that the commissioners failed to provide by specific designation a means of ingress and egress to and from the lands assigned to appellant. While the record does disclose that James Tomlinson in his lifetime made use of a roadway owned by him leading from the public highway to the tract of land allotted to appellant, it also discloses that this roadway is a part of the land assigned to one of the other heirs, and no provision is made, either in the report or in the decree, for the use of this roadway by appellant. In the partition of land, ways are an essential element to its use and enjoyment. Free access to the public highway, therefore, should be provided for in the decree of partition. This avoids the possibility of forcing a joint owner of the land to resort to the courts in the future to compel the establishment of a roadway in order to enjoy that portion of the land assigned to him.

For the reasons stated, the decree of the circuit court must be reversed and the cause remanded.

*Reversed.*