# Staunton

R. F. TRANT, INC. V. J. C. UPTON, ADM'R, ETC.

September 22, 1932.

Present, Campbell, C. J., and Epes, Hudgins and Browning, JJ.

The opinion states the case.

*Page, Page & Page,* for the plaintiff in error.

*Rixey & Rixey,* for the defendant in error.

BROWNING, J., delivered the opinion of the court.

The defendant in error was the plaintiff in the trial court and the plaintiff in error was the defendant and as such they will hereinafter be designated.

The case is the result of an accident which happened on Indian River boulevard in Norfolk county, Virginia, just in front of plaintiff's home, on Saturday, the 20th of December, 1930, about 1:30 P. M., when the plaintiff's child, Margaret Lucille Upton, about four years old, was run over and killed by the defendant's Chevrolet truck, which was driven at the time by the defendant's employee, J. L. Gaylord. The facts sufficiently stated as is necessary are as follows: The plaintiff's residence is situated on the boulevard about twenty feet from the sidewalk. On one side is another residence and on the other a vacant lot and just beyond and contiguous thereto is a street called Wingfield avenue which intersects with the boulevard at right angles. The boulevard is of concrete and is sixteen feet wide. The two houses mentioned are the only residences on the boulevard in that vicinity and at that time there

were no buildings of a public nature, such as school houses and the like, in that neighborhood.

The defendant's truck was proceeding in the direction of Norfolk at a speed estimated from thirty-five to sixty miles an hour, the driver placing his speed at thirty-five miles and Miss Upton, an aunt of the child, who saw the car approaching, saying that she thought it was about fifty-five or sixty miles an hour. The boulevard is straight for a considerable distance in each direction from the point of the accident. An automobile, which was about two-tenths of a mile behind the truck, was going in the same direction and the scene of the accident and its incidents were observable to the driver. The mother and aunt of the child were at the house of the plaintiff at the time on the side porch and heard the truck approaching and saw it. The mother had called to the child and told her to put up her playthings and come to bed. The child was playing at the steps of the side porch at the time and at the call of her mother started around to the other side of the house out of the sight of her mother to put up her toys. The little girl was seen, by a man who was riding in the defendant's truck, sitting at the right of the driver, and by the driver of the automobile which was following defendant's truck, to run across the boulevard to a point three or four feet off the concrete and stop and pick up something and then turn and run back when she was struck at a point near the middle of the boulevard by the front bumper of the truck. The truck was stopped at a point opposite a fire plug, across Wingfield avenue, which was 114 feet from the point of the impact.

The case was tried in April, 1931, and resulted in a verdict for the plaintiff for damages in the sum of $10,000.-00. On the motions of the defendant to set aside the verdict and grant it a new trial on the grounds that it was contrary to the law and the evidence and excessive in amount, and to set aside the verdict and enter a judgment for the

defendant *non obstante veredicto,* the verdict was sustained and judgment entered for the plaintiff for the full amount.

The case is here upon a writ of error awarded by this court and the defendant brings four assignments of error which we shall consider in their inverse order.

It is urged that the trial court should have set aside the verdict because it was plainly wrong and without evidence to support it.

■ There was convincing evidence that the driver saw or could have seen the child in ample time to have employed the precautions required by law to avoid the injury. It will be noted that the boulevard or road was straight for a very considerable distance in both directions from the point of the accident. There was really nothing to prevent the driver of the truck from seeing the child, in all of its movements with reference to the road, if he had been looking ahead, as was his duty, particularly when traveling on a much used highway and approaching a point where there were two residences fronting on the highway and in close proximity to each other and where there was an intersecting street.

W. F. Savage was a witness for the defendant, who was sitting on the right of Gaylord, who was the driver of the truck. He testified on cross examination as follows:

"Q. Where was she in the road at the time the car struck her?

"A. Just came from the lefthand side of the road and got about three-fourths of the whole width of the road going back from the left side, came back to the right.

"Q. How far towards the righthand side did she get on the second trip over?

"A. She got a little over three-fourths the distance of the road back to the right.

"Q. She was over on your righthand side when you struck her?

"A. Yes, sir.

"Q. Did you see the child when she went from your right over to your left?

"A. Yes, sir.

"Q. She got off the concrete, stooped down and picked something up?

"A. Yes, sir.

"Q. Was there any reason why Mr. Gaylord could not have seen it?

"A. I don't see no reason why he could not see it except on account of that car standing there. That is what caused him not to see it.

"Q. You saw the child when she ran across the road?

"A. I saw the child when she ran across the road and that made her pop out from in front of us.

"Q. And you saw her when she started to run across from your right to your left?

"A. We was about middleway of the road.

"Q. You saw that?

"A. Yes, sir, and she was going to the left.

"Q. Was there any reason why Mr. Gaylord could not have seen it?

"A. I could not tell you.

"Q. What?

"A. I could not tell you.

"Q. If you saw her, Mr. Gaylord could have seen her.

"A. Sure, he could have seen it by looking at it.

"Q. As I understand your evidence, she ran from over here?

"A. Yes, sir.

"Q. Over to this side?

"A. Yes, sir.

"Q. Got off the concrete, got down in the gulley and picked up something?

"A. Yes, sir.

"Q. And she came back and got about three-fourths the way across when she was struck?

"A. Yes, sir.

"Q. And it would take her some seconds to do that, wouldn't it?

"A. I guess it would.

"Q. And you say you don't know of any reason why Mr. Gaylord could not have seen what you saw?

"A. No, sir, because I wasn't looking for him.

"Q. Now, you say that the bumper picked the child up and carried her some little distance?

"A. It struck the child and run her down and immediately run over her."

E. R. Voliva, a witness for the plaintiff, who was driving his automobile in the same direction as the defendant's truck, and who was about two-tenths of a mile behind it, testified as follows:

"Q. Did the accident occur right there in front of his house?

"A. Yes, sir.

"Q. All right, sir. You were coming behind the Trant truck going toward Norfolk, were you?

"A. Yes, sir.

"Q. Coming in that direction, on which side is the Upton house?

"A. Coming towards Norfolk?

"Q. Coming towards Norfolk.

"A. It is on the right side.

"Q. It is on the right side?

"A. Yes, sir.

"Q. You saw the child run from the right side over to the left side?

"A. Yes, sir.

"Q. Where did she go?

"A. Across the road.

"Q. Did she go clean across the concrete?

"A. Yes, sir.

"Q. Did she get off the concrete?

"A. Yes, sir.

"Q. How far off the concrete?

"A.   I guess three or four feet, something like that.

"Q.   I understood you to say she picked up something?

"A.   Yes, sir; I think she picked up a can, something like that.

"Q.   What did she do after that?

"A.   She turned around and started back across the road and the truck hit her.

"Q.   How far did she get across the road the second time before the truck struck her?

"A.   About the center.

"Q.   The center of the street?

"A.   Yes, sir.

"Q.   Did she stop before the truck struck her or was she moving at the time?

"A.   I think she stopped.

"Q.   Was there anything to have prevented the Trant truck driver from seeing the child when she first started to run from the right to the left side?

"A.   No, sir."

Mr. Page:   "I object to that.   It calls for a conclusion."

Mr. John Rixey:   "I mean if there was any obstruction there?"

The Witness:   "No, sir."

By Mr. John Rixey:

"Q.   Was there any obstruction or automobile or otherwise between the Trant truck and the little girl when she started across there?

"A.   No, sir.

"Q.   Now, what course did the Trant truck pursue?

"A.   What?

"Q.   What did the Trant truck do?

"A.   It pulled out to the left, across the road to the left.

"Q.   Suppose the Trant truck driver had kept straight over on the right hand side, would he have struck the child?

"A.   No, sir; I don't think he would."

Mr. Page:   "That calls for an opinion, and I object."

The Court: "I understood him to ask him if the driver had kept to his right would she have been struck. What is the objection to it?"

Mr. Page: "I object to his giving his opinion. He can tell exactly what happened, but that is for the jury to determine, what would have happened."

The Court: "I don't think that is objectionable."

By Mr. John Rixey:

"Q. Was there sufficient room for the Trant truck to have passed the child if the Trant truck had stayed on the righthand side?

"A. Yes."

Mr. Page: "Let him state exactly what happened."

The Court: "It is a question of whether there was sufficient room. How much space there was is a matter of fact and does not call for a question of opinion."

Mr. Page: "Exception."

J. L. Gaylord, the driver of the truck, and a witness for the defendant, testified on cross examination as follows:

"Q. Sawyer (Savage) was sitting beside you?

"A. Yes, sir.

"Q. He was sitting on your right, was he?

"A. Yes, sir.

"Q. So if there was a car parked in there it ought to have blinded him more than it did you?

"A. Yes, sir.

"Q. He saw the child cross over from the right, and you didn't, did you?

"A. No, sir.

"Q. Where was that car parked that you speak of?

"A. It was parked in front of a house there, kind of.

"Q. In front of the Upton house?

"A. I don't know, sir. It was in front of one of them houses there.

"Q. You didn't testify before the coroner?

"A. Downstairs?

"Q. Yes.

"A. No, sir.

"Q. You did testify before the magistrate, didn't you, in Norfolk county?

"A. Yes, sir.

"Q. And you didn't say anything to him about any car being parked there, did you?

"A. No, sir.

"Q. Why didn't you?

"A. It just didn't come to me.

"Q. What?

"A. It just didn't come to me.

"Q. And it didn't come to you until this morning, did it?

"A. No, sir.

"Q. And it didn't come to you until you talked to Mr. Page and this negro, Sawyer (Savage), did it?

"A. Sir.

"Q. It didn't come to you until you talked to Mr. Page and to the negro, Sawyer (Savage), did it?

"A. No, sir."

It will be noted that the excuse given by Savage and Gaylord, for Gaylord's failure to see the child, when she crossed the boulevard from her home going to the right and went off of the concrete three or four feet and picked up a can and then started back to her home and got certainly as far as the middle of the concrete road, was that a car was parked on the side of the road next to the two residences which obscured his vision of the child. This explanation is unconvincing since Savage, who was admittedly in a less advantageous position to see, saw it all, and Voliva, who was two-tenths of a mile in the rear, saw it all. The jury saw the witnesses and heard them testify and doubtless discarded this testimony about the presence of a parked car, in the face of the fact that the two witnesses admitted that they had testified before, one before the coroner and the other before the examining magistrate, and in neither instance was the parked car mentioned by them. The reasons given by them for their previous silence

on the subject evidently did not appeal to the credulity of the jury. In addition to this Voliva, Mrs. Upton, Miss Upton and Julian Wilkinson all testified that no car was parked there.

There was unimpeached testimony that the truck, after striking and running over the child, was not stopped until the rear end was about opposite a fire plug which is 114 feet from the place of the impact. The evidence was conflicting as to the distance within which the truck, under the circumstances, should have been stopped under normal conditions. The evidence was also diverse as to the condition of the brakes of the truck. We think its weight was with the contention of the plaintiff that they were not in efficient order. These conflicts, however, were settled in favor of the plaintiff by the verdict of the jury.

In the case of *Price* v. *Burton*, 155 Va. 229, 234, 154 S. E. 499, 500, this court said, through Justice Gregory: "It must be borne in mind, that unless the verdict of the jury is plainly wrong or without evidence to support it, this court will sustain it. Under this rule, in view of the verdict of the jury, we will consider all material conflicts in the testimony as settled by the verdict in favor of the plaintiff."

We think the trial court was plainly right in overruling the motion to set aside the verdict of the jury upon the grounds we have considered and it must stand unless there has been prejudicial error in the rulings of the court upon the questions of law presented.

The defendant insists that the case of *Messick* v. *Mason*, 156 Va. 193, 157 S. E. 575, 578, is controlling here but the facts in that case are so dissimilar to those in the case in judgment as to make it easily and readily distinguishable. In that case no witness saw the child until just a moment before she was struck. She went down on the right side of the bus from which she had alighted, unobserved at any time by anyone on the offending automobile, and then around behind it, from whence she started across the road and for the first time was seen by the driver of the automobile

when it was within less than a car length of her at which moment he applied his brakes and stopped within a car length from the point of the impact.

Justice Epes in delivering the opinion very properly said in that case: "Until he *sees* or *ought to have seen* the child, his permissible speed is no less, and the degree of care and vigilance owed by him is no greater in a case in which a child is involved than a case in which an adult is involved.

\* \* \* \* \* \* \* \* \* \*

"None of the evidence places her or any other child (except possibly Robert Wallace) in a position such that she or they were not, for all practical purposes, effectively screened from the view of the Masons by the closely curtained truck and the open door of the truck, until Virginia emerged from behind the truck, at which time the Mason truck was within a car length of her."

Thus it is seen that that case is not our case at all.

The *Price* v. *Burton Case, supra,* and the case of *Ball* v. *Witten,* 155 Va. 40, 154 S. E. 547, involve facts very similar, in important particulars, to those of the case under consideration and the law in those cases enunciated are applicable hereto. In the former case it was said at page 236 of 155 Va., 154 S. E. 499, 501: "As stated, Mrs. Price (defendant's driver) having seen the children near the road, this fact alone constituted a danger signal to her and gave her notice of the risk and danger of the situation, and while she might not have expected and foreseen that the child would be pushed into the road in front of her automobile, yet she was expected to anticipate the danger of an accident in passing the children standing near the road. She was expected to anticipate that they, under some childish impulse, heedless of danger, and presumptively incapable of exercising the precaution which is expected of adults, might, through their thoughtlessness, expose themselves, in some way, to danger of injury, and involve her in an accident.

"The driver is bound to exercise reasonable care, varying in accordance with the circumstances. Knowing from the immature years of children that they do not exercise sound judgment and will take little precaution for their safety, the driver of an automobile necessarily must increase his vigilance to prevent injury to them as the necessities of the case require."

In the *Ball* v. *Witten Case, supra,* at page 46 of 155 Va., 154 S. E. 547, 549, Justice Gregory delivering the opinion said: "Certainly it is true that the conduct of a child is not measured by the same rules which govern that of adults, because a child does not have the knowledge and experience to know or estimate correctly the probable consequences of his acts in a given instance. Reasonable care required of automobile drivers towards children demands that the driver consider the age, maturity, and intelligence of the child. He must increase his exertions to avert injury to children. Children of tender years are entitled to a degree of care from others proportioned to their inability to foresee and avoid the perils which they may encounter. The driver must not assume that an infant only five years old will exercise proper care for its own protection; on the other hand, he is charged with knowledge of the fact that a child of that age may be expected to act upon childish impulses, and he should take that fact into consideration and exercise vigilance and precaution which the circumstances demand."

The third subdivision of the third assignment of error involves the instructions asked for by the defendant and refused by the court.

■ Having reached the conclusion that the jury could not have properly found any verdict other than a verdict finding the defendant's driver guilty of negligence, it is useless to consider the instructions bearing on that point, for even if there be error in them it is harmless.

The second subdivision of assignment of error No. 3 calls in question the action of the court in refusing certain

instructions as asked for by the defendant, and amending the same over its objection and exception.

What has been said with respect to the exceptions to the instructions refused applies here.

The first subdivision of the third assignment of error relates to the instructions which were given by the court at the instance of the plaintiff.

What we have said before as to the instructions refused and those amended applies here also, as to those relating to liability.

Instruction No. 8-P correctly instructed the jury as to the question of damages and its elements, and was properly given.

The second assignment of error is predicated upon the alleged improper remarks of counsel for the plaintiff in his argument to the jury. Without repeating the alleged offending language, it is sufficient to say that in our opinion it does not constitute reversible error in this case. The law on this subject has been so fully stated and elaborated by this court that it is not necessary to restate it.

The first assignment of error brings in question the action of the trial court in admitting certain testimony as evidence objected to and excepted to by the defendant. It is insisted that it was improper to allow the witness, Nowitzky, to contradict the witness, Stokley, as to the condition of the brakes of defendant's truck. Nowitzky tested the brakes about an hour and a half after the accident and Stokley, an employee of the defendant, was present and took some part in making the test. Nowitzky had testified that when Stokley applied the brakes the truck would not stop because the brakes would not hold. Stokley contradicted this, saying that the brakes could have been better but that they checked the truck. When asked if he did not tell Nowitzky that the brakes were "no good," he said: "Not that I recall." Nowitzky was again put upon the stand and testified that Stokley said that the brakes were bad. We

see no valid objection to this testimony as bearing upon the credibility of the witness, Stokley. The trial court so held.

There was no error in admitting the testimony of Mrs. Upton that the accident happened on the 20th of December and that was four days before Christmas and that preparations were being made in her home for the holiday celebration, as having some bearing upon the measure of mental anguish. For the same reason we think that the testimony of Mrs. Jenette and Mrs. Cudworth, neighbors and friends of Mrs. Upton, that Mrs. Upton was in an extremely nervous condition after the child was killed, was admissible.

The testimony of the witness, Voliva, who was driving the automobile two-tenths of a mile in the rear of the truck, and who saw the accident and observed the movements of the child, that there was sufficient room or space on the right of the child for the defendant's truck to pass, was admissible as the statement of a fact. Just preceding this testimony the witness was asked this question: "Suppose that the Trant truck driver had kept straight over on the right hand side, would he have struck the child?," to which he replied, "No, sir; I don't think he would." The court allowed this over objection. Strictly speaking, the jury, with the facts before them, might have been as competent to judge of this matter as the witness, and thus the opinion evidence rule as to a non-expert witness was offended, but the harm, if any, was negatived by counsel for plaintiff eliciting from the witness the fact as to whether there was room enough to pass on the right.

In the case of *Denis* v. *Commonwealth*, 144 Va. 559, 131 S. E. 131, 135, Judge Burks in speaking of the opinion evidence rule, quoted from 3 *Wigmore on Evidence* (1st Ed.), section 1929: "Under this rule we accomplish little by enforcing it and we should do no harm if we dispensed with it. We accomplish little, because, from the side on which the witness appears and from the form of the question his answer—that is, his opinion—may often be inferred. We

should do no harm because, even when the final opinion or inference is admitted, the inference amounts in force usually to nothing unless it appears to be solidly based on satisfactory data, the existence and quality of which we can always bring out, if desirable, on cross examination. Add to this that, under the present liberal application of the rule, and the practice as to new trials, a single erroneous ruling upon the single trifling answer of one witness out of a dozen or more in a trial occuping a day may overturn the whole result and cause a double expense of time, money and effort; and we perceive the absurdly unjust effects of the rule. And finally, the utter impossibility of a consistent application of the rule, and consequent uncertainty of the law, and we understand how much more it makes for injustice rather than justice. It has done more than any other rule of procedure to reduce litigation to a state of legalized gambling."

We think there was no error in the ruling of the court in admitting the testimony of the witness, Nowitzky, who made experiments in stopping the truck in question to ascertain the distance it would go when the brakes were applied. In the first place the evidence showed that from his official position, his former business and his experience and practice that he was competent to testify as an expert, though he said he was not one. The conditions existing at the time of the experiment were substantially the same as those obtaining when the accident happened.

In *Blashfield, Cyc. of Automobile Law,* Vol. 2, 1691, section 71, it is said: "The results of experiments, made at the scene of an accident for purpose of verifying or disproving particular theories as to how the accident occurred, may be admissible, if the conditions under which the experiments are conducted correspond substantially to those surrounding the accident.

"Thus, in an accident for injuries from being run over by an automobile, it is proper to permit evidence relative to the results of an experiment in stopping an automobile,

such as the one involved in the collision, made under substantially the same conditions as those existing at the time of the accident."

The question of the amount of the recovery, or damages, in an action for wrongful death is left to the discretion and judgment of the jury, and in this case we cannot say that the amount of the verdict shows that this discretion has been abused.

*Affirmed.*