# Richmond

VIRGINIA ELECTRIC AND POWER COMPANY v. MANFRED CALL, III, AND OTHERS.

November 30, 1953.

Record No. 4115.

Present, All the Justices.

The opinion states the case.

*Hunton, Williams, Anderson, Gay & Moore, Ralph H. Ferrell, Jr., E. Milton Farley, III* and *T. Justin Moore,* for the plaintiff in error.

*Edwards, Rogers & Cudlipp,* for the defendants in error.

EGGLESTON, J., delivered the opinion of the court.

The Virginia Electric and Power Company, hereinafter called the condemner, filed its petition with the court below to condemn a 150-foot easement or right of way for the construction and maintenance of its electric power transmission lines over the lands of Manfred Call, III, and Mary Miller Call, his wife, C. C. Vaughan, Jr., and Page Newman Rudd, sometimes hereinafter referred to as the landowners, near Bon Air in Chesterfield county. The easement extends 1,364.3 feet over the Call tract and embraces 4.7 acres. The Call tract as a whole contains approximately 166 acres. The easement extends 3,684.5 feet over the Vaughan-Rudd tract and embraces 12.02 acres. The Vaughan-Rudd tract as a whole contains approximately 358 acres.

On June 30, 1950, the commissioners who had been appointed for the purpose, filed their written report in which they awarded the Calls $1,575 as compensation for their

property taken for the easement, and $800 for damages to the residue, or a total of $2,375. They awarded Vaughan and Rudd $3,850 as compensation for their property taken for the easement, and $10,000 for damages to the residue, or a total of $13,850.

On July 3 the condemner paid into court the full amounts awarded the respective landowners, and shortly thereafter, the exact date not being disclosed in the record, entered upon the property and began the construction of the transmission lines.

On July 12 the condemner filed exceptions to the report of the commissioners, asking that the awards made these landowners be set aside on the grounds that they were "grossly excessive," that the commissioners had heard and considered "improper evidence," and had arrived at their awards "in an improper manner and without due consideration" of the court's instructions. The exceptions were heard on October 6, 1950, and on April 30, 1952, the lower court rendered its opinion overruling the exceptions and holding that the condemner must pay interest on the awards. On July 14, 1952, final orders were entered confirming the awards and adjudicating that the respective landowners were entitled to interest thereon from October 1, 1950, until the amounts were paid to them. From these orders the present appeal was allowed.

The condemner assigns error both to the action of the lower court in not setting aside the awards and in allowing interest thereon.

First, it contends that the Call award should have been set aside because, it says, it appears from the testimony of H. D. Eichelberger, one of the commissioners, that he improperly considered "hearsay evidence" of the values of other property in the neighborhood. This commissioner had testified that the award was based on a valuation of $335 an acre for the 4.7 acres embraced within the boundaries of the easement. Upon being pressed as to the justification for this valuation, he replied: "I know quite a few of the real

estate people and do right much business with them and they have shown me figures they are getting in that area I wouldn't have believed if I hadn't seen them." These figures, he said, were "about four times higher" than the acreage valuation which the commissioners had placed upon the property.

Information obtained by the commissioner in this manner should not have been considered by him, but, in the light of his whole testimony, the fact that he had such information does not require that the award be set aside. There is nothing to suggest that he conveyed to his colleagues the information which he had acquired, or that they were influenced thereby. In fact, he said that each of the commissioners, without conferring with the others, made his own calculations as to the value of the Call property, and that the slight differences therein were quickly adjusted. The acreage valuation arrived at was much less than that about which Eichelberger said he had been told.

While the per acre valuation fixed by the commissioners is slightly in excess of that testified to by the witnesses, the commissioners went upon and viewed the land pursuant to Code, § 25-14, and they were properly instructed that they were "not bound by the opinion of experts," and might give their "own conclusions" as to value. *Kornegay* v. *City of Richmond*, 185 Va. 1013, 1026, 1027, 41 S. E. (2d) 45, 51.

The condemner also attacks the testimony of Commissioner Eichelberger because, it says, it shows that in arriving at the amount of the Call award this commissioner took into consideration evidence of lot sales which had been adduced with reference to the valuation of the Vaughan-Rudd lands.

It will be observed that the condemner elected to condemn an easement across the Call, Vaughan and Rudd and other properties in one proceeding, and the same commissioners heard the evidence as to the values of the several pieces of land. Since a part of the Vaughan-Rudd property

had been subdivided these landowners introduced evidence of lot sales in the neighborhood which they claimed was pertinent to the valuation of their tract. The condemner argues that such evidence was inadmissible with respect to the Call property which had not been so divided.

But there is nothing in the testimony of Eichelberger, as we read it, which indicates that in arriving at the valuation of the Call property he took into consideration the evidence with respect to the valuation of the Vaughan-Rudd tract. It is true that when Commissioner Eichelberger was pressed by counsel for the condemner as to his justification for the valuation of the Call property at $335 an acre, he was asked if he knew of any sales on Jahnke road at $1,000 an acre, and his reply was that it had been developed at the hearing on the valuation of the Vaughan-Rudd tract that property in a subdivision of that tract, bordering on that road, had sold at "$1,200 an acre." Yet there is nothing in Eichelberger's testimony to indicate that he applied this valuation to the Call property.

As has been said, the commissioners fixed the value of the 12.02 acres of land within the boundaries of the easement over the Vaughan-Rudd tract at $3,850, or $320 an acre, and awarded the sum of $10,000 for damages to the residue of the tract. The condemner does not contest the amount of the award for the property taken, but contends that the award for damages to the residue should be set aside as excessive because, it says, it appears from the testimony of Commissioner Eichelberger that the commissioners placed a higher value per acre on that part of the tract which they considered would be damaged by the proximity of the transmission lines than they placed on the land actually taken. The basis of this contention is the testimony by Eichelberger that in addition to the 12.02 acres taken, the commissioners thought that twice as many acres, that is, 24 acres, lying immediately adjacent to the easement would be a "total loss" to the landowners. Dividing the amount awarded for damages to the residue, $10,000, by

24 acres, the condemner says, shows that the commissioners placed a value of $416 an acre on the damaged property, whereas they had placed a value of $320 an acre on the area actually taken.

But Eichelberger did not testify that these 24 acres were the only portion of the tract which would be damaged by the proximity of the transmission lines. He testified that the commissioners thought that additional property on both sides of the easement would be damaged. He said that Parcel B, comprising 20.3 acres and lying between the western edge of the easement and a subdivided portion of the tract, being unfit for subdivision after the construction of the lines, would be a total loss to the landowners, and that property to the east of the easement "undoubtedly would be damaged."

That the damage would not be confined to a narrow strip on either side of the easement, as the condemner contends, amply appears from the testimony adduced before the commissioners. The witness, Thalhimer, characterized the Vaughan-Rudd tract of 358 acres as "a very fine piece of subdivision land within two and a fraction miles of the city of Richmond." From the maps offered in evidence it appears that the easement runs diagonally through this property in a northwesterly direction, leaving approximately 140.5 acres to the east thereof and 205.5 acres to the west. Seventy-six acres of the southwestern part of the tract have already been subdivided into building lots, a number of which have been sold. Between the eastern boundary of this subdivision and the western edge of the easement lies Parcel B, consisting of 20.3 acres, which the witnesses testified would not be suitable for subdivision since the construction of the power lines. Thalhimer estimated that the damage to the residue of the whole tract, by reason of the taking, amounted to $18,160. After having viewed the land the commissioners fixed the damages to the residue at $10,000. We find in the record no reason for disturbing the award.

■ Next, the condemner says that both awards should be set aside because before the hearing on October 6, 1950, when the commissioners were called to testify and explain their awards, counsel for the landowners discussed "privately" with them the written instructions which the court had previously given them with respect to the performance of their duties and the principles they should apply in determining the amounts of their awards. Such discussion with the commissioners, the condemner says, was improper and contrary to the court's instructions to the commissioners that they should not "discuss" the case with anyone "except when together assembled for and engaged in the discharge of their duties in public as commissioners."

This contention is based upon a misconception of the status of the commissioners at the time this discussion with counsel for the landowners took place. The instruction which the court had given them expressly referred to their conduct "in the discharge of their duties * * * as commissioners." That function they had already performed, for they had heard the evidence and made their report. When they were called to testify and explain their report on October 6, 1950, the date on which the discussion with counsel took place, they occupied the status of mere witnesses, and it was entirely proper for them to discuss with counsel on either side, if they were willing to do so, what evidence they would give at the hearing.

■ The condemner's final assignment of error is to the action of the trial court in allowing interest on the amounts of the awards from October 1, 1950, three months after the date on which the report of the commissioners was filed, until the amounts are paid to the landowners. The condemner takes two positions with respect to the payment of interest.

First, it says that whether interest is allowable is "simply" a matter of "statutory construction," that our statutes make no provision for the payment of interest on an award except when, after payment into court, a second report is

made and confirmed whereby the sum awarded exceeds the amount which the condemner has so paid into court. Code, § 25-24. The absence of a statutory requirement for the payment of interest under the circumstances of the present case, the condemner says, shows that none is allowable.

Moreover, it argues, even if interest be allowable in some circumstances it should not be required in the present case, because the condemner paid into court the amounts of the awards under the provisions of Code, § 25-20, before taking possession of the property, and such payment into court was tantamount to payment to the landowners.

The landowners, on the other hand, argue that the problem is not one simply of "statutory construction;" that under section 58 of the Constitution one whose property is "taken or damaged for public uses" is guaranteed "just compensation" therefor; that the allowance of interest under proper circumstances is an essential element in that compensation; that the condemner, immediately after the payment of the amounts of the awards into court, took possession of the lands under the provisions of Code, § 25-23, and began its construction work; and that shortly thereafter, on July 12, 1950, it filed exceptions to the report of the commissioners, which precluded the landowners from receiving the amounts of the awards until such exceptions had been disposed of. Hence, the landowners say that the deposit into court, under such circumstances, was not tantamount to a payment to them and that the lower court was right in allowing interest on the amounts of the awards.

There is a conflict of authority as to the allowance of interest on the amount of an award in condemnation proceedings. "In the great majority of the jurisdictions, interest is allowed as part of the damages or compensation to which one whose property has been taken under the power of eminent domain is entitled as part of the just compensation required by the Constitution. In only a few jurisdictions is interest denied, and in some of the cases it seems that under the statutes the condemner cannot enter into posses-

sion of the property until payment has been made therefor." 18 Am. Jur., Eminent Domain, § 272, pp. 912, 913.[1] See also, 3 Nichols on Eminent Domain (3d Ed., 1950), § 8.63, pp. 104-109; 2 Lewis on Eminent Domain (3d Ed., 1909), § 742, pp. 1319-20; Anno: 96 A. L. R. 150, 111 A. L. R. 1304.

Typical of the majority view are the decisions of the Supreme Court of the United States which hold that interest is a part of the just compensation to which the property owners are entitled under the Fifth Amendment where their property is taken by the Federal Government for public use. See *United States* v. *Rogers*, 255 U. S. 163, 41 S. Ct. 281, 65 L. ed. 566 (affirming C. C. A. 8, 257 F. 397); *Seaboard Air Line Ry. Co.* v. *United States*, 261 U. S. 299, 43 S. Ct. 354, 67 L. ed. 664.

In *Seaboard Air Line Ry. Co.* v. *United States, supra*, in holding that the owner was entitled to interest from the time of the taking of its property, the court said: "The requirement that 'just compensation' shall be paid is comprehensive and includes all elements and no specific command to include interest is necessary when interest or its equivalent is a part of such compensation. Where the United States condemns and takes possession of land before ascertaining or paying compensation, the owner is not limited to the value of the property at the time of the taking; he is entitled to such addition as will produce the full equivalent of that value paid contemporaneously with the taking. Interest at a proper rate is a good measure by which to ascertain the amount so to be added." 261 U. S., at page 306.

In *Simms* v. *Dillon*, 119 W. Va. 284, 193 S. E. 331, 113 A. L. R. 787, upon like reasoning, the West Virginia court held that a landowner whose property is taken in a condemnation proceeding for public use is entitled to interest from the time of the taking until final payment of the money, notwithstanding there is no express provision to that

---

[1] This authority (page 913, note 13) lists Virginia among those States which allow interest.

effect in the statute. Such right to interest, it was held, is implied.

In 3 Nichols on Eminent Domain (3d Ed., 1950), § 8.63, pp. 104-109, it is said:

"The theory of the law is that, when land is taken by eminent domain or when it is injured in such a way as to create a constitutional right to damages, payment for the land thus affected should be coincident with the taking or injury, and, if for any reason payment is postponed, the right to interest from the time that payment ought to have been made until it is actually made follows as a matter of strict constitutional right. When compensation is made before the taking or injury, in accordance with the requirements of the constitutional or statutory law of the state, there is no constitutional right to interest, and if interest is allowed from the inception of the proceedings, or from the date of the award, or from any other point of time, it is purely a matter of legislative grace. When, however, the owner is not paid the compensation until after the taking or injury is complete, as is the practice in many of the states, either with or without the sanction of law, when land is taken, and in almost all of them when it is merely damaged, it is well settled that he is entitled to interest, or at least to its equivalent in the form of damages for the detention of his money. The ideal method would be to award the damages at the same moment that the taking was made, but the necessity of a judicial ascertainment of the amount of damages makes this method impossible. The 'just compensation' required by the constitution will not allow the owner of the land to suffer for this delay."

The subject of the allowance of interest on an award in condemnation proceedings was fully considered by this court in *City of Richmond* v. *Goodwyn*, 132 Va. 442, 112 S. E. 787. There the city of Richmond filed condemnation proceedings to acquire the lands of Goodwyn and others for street purposes. On October 23, 1920, the commissioners filed their report fixing the amount of compensation due the

landowners. No exceptions were taken to the report by either side. Several months later the landowners, acting under Code of 1919, § 4387 (Code of 1950, § 25-22), gave notice to the city that since the amount of the award had not been paid or deposited into court within three months from the date of the commissioners' report, they would move to vacate the proceedings. On the day before the motion was to be heard the city deposited the amount of the award in bank to the credit of the court in the cause and notified counsel for the landowners that this had been done. The landowners claimed, and were allowed, interest at the rate of six per cent per annum from the date of the filing of the commissioners' report until the money was paid into court, and additional interest at the rate of three per cent per annum from the date of the deposit until the money was paid to them. The city appealed.

In an opinion by Judge West this court reviewed the subject of the allowance of interest, taking note of the conflict of authority and the fact that our statutes are silent on the subject except in the case of an excess award under Code, § 25-24, *supra.*

The opinion cites with approval the holding in *United States* v. *Rogers,* C. C. A. 8, 257 F. 397 (affirmed 255 U. S. 163, 41 S. Ct. 281, 65 L. ed. 566, *supra*), that "The principle supporting an interest allowance is the duty and obligation to make just compensation. Whatever is an essential element in that compensation cannot be excluded, even by legislative enactment." Hence, it observed that the determination of what is "just compensation" involves the interpretation of both constitutional and statutory provisions. 132 Va., at page 447.

The opinion further holds: "Whether interest on the award should be allowed must depend upon the construction of the local statute, in the light of the constitutional provision that private property shall not be taken for public use without just compensation, the report of the commissioners

and *all the facts and circumstances surrounding the case.*" (Emphasis added.) ˙ 132 Va., at pages 452, 453.

It was further observed in the opinion that the commissioners, in fixing the amount of their award, "are presumed to have allowed for the inconveniences, damage and delay arising out of the proceedings, certainly to the date of the filing of their report, and for three months thereafter, as the statute [§ 25-22] contemplates that the party condemning may have not to exceed three months, in which to decide whether he will take the property at the valuation fixed by the commissioners, after which, if the amount ascertained has not been paid, the proceedings shall, on motion of the condemnor or either defendant, be dismissed." 132 Va., at page 453.

Furthermore, the opinion points out, the payment into court of the amount fixed by the commissioners "is equivalent in law to a payment of the same to the landowner, and terminates his right to demand further payment of interest thereon, certainly *in a case where he is not contesting the legality of the proceeding or the award of the commissioners.*" (Emphasis added.) 132 Va., at pages 453, 454.

Upon this reasoning the judgment of the lower court as to the allowance of interest was modified to hold that the landowners were entitled to interest after the expiration of three months from the date of the filing of the commissioners' report until the date on which the money was deposited in bank to the credit of the court.

■ The condemner claims that under the holding in *City of Richmond* v. *Goodwyn, supra,* the payment by it into court of the amount of the award "is equivalent in law to a payment of the same to the landowner" and terminates his right to interest thereafter. But there, as the opinion points out, the condemner, after making the deposit, did not contest the legality of the proceeding or the award of the commissioners. Thus, the money paid into court was immediately made available to the landowners.

In the case before us, shortly after the amounts of the awards were paid into court the condemner, by filing exceptions to the report, challenged the legality of the proceedings and the amounts of the awards. Furthermore, it has prosecuted this appeal from the final judgments entered upon the awards. Of course, the condemner was entirely within its right in taking these steps, but in so doing it has precluded the landowners from receiving the amounts of the awards, and thus the payment of the funds into court was not equivalent in law to the payment to the landowners.

In 3 Nichols on Eminent Domain (3d Ed., 1950), § 8.3(2), p. 113, the author recognizes the rule that ordinarily "a deposit for the use of the owner stops the running of interest." However, he observes that if "the owner is prevented from availing himself of the use of the money deposited or tendered by reason of an appeal by the condemnor, interest continues to run." (Page 114, note 34.)

To the same effect is the holding in *Schnull* v. *Indianapolis Union R. Co.,* 190 Ind. 572, 131 N. E. 51, where it is said: "The rule ought to be, and we hold, that * * * in case the condemnor appeals and thereby prevents such owner from using the money thus tendered or paid into court, he would be entitled to interest upon the full amount of the award as determined on appeal from the time the condemnor took possession of the property." (131 N. E., at page 54.)

The cases of *City of Richmond* v. *County of Henrico,* 185 Va. 176, 37 S. E. (2d) 873, and *The Pittston Company* v. *O'Hara,* 191 Va. 886, 63 S. E. (2d) 34, relied upon by the condemner, are not in point. Both of these cases involved merely the interpretation of statutes which made no provision for the payment of interest. But the present case, as has been observed, involves the interpretation of eminent domain statutes in the light of the constitutional provision which guarantees to a property owner "just compensation" for his lands which are taken or damaged for public uses.

*City of Richmond* v. *Goodwyn, supra* (132 Va., at page 447).

For these reasons we are of opinion that the landowners were entitled to interest on the awards.

The orders complained of are

*Affirmed.*