# Staunton

FANNIE LOU HARMAN COLLINS v. PULASKI COUNTY, ET AL.

September 3, 1959.

Record No. 4981.

Present, All the Justices.

The opinion states the case.

*Ted Dalton* and *James C. Turk* (*Dalton, Poff & Turk*, on brief), for the plaintiff in error.

*John M. Goldsmith* and *Robert S. Irons* (*Goldsmith & Irons*, on brief), for the defendants in error.

BUCHANAN, J., delivered the opinion of the court.

Pulaski county and seven other political subdivisions of the Commonwealth filed in the court below six petitions to condemn several tracts of land in said county for the construction and operation of the New River Valley Airport. Code §§ 5-20 *ff.*, §§ 25-8 *ff.* One of the tracts sought to be condemned, being 60.26 acres of a tract of 76.60 acres, belonged to the appellant, Fannie Lou Harman Collins. For this 60.26 acres the commissioners appointed pursuant to § 25-12 of the Code allowed her $13,558.50 plus $6,000 for damages to her adjacent and other property, a total of $19,558.50. She filed exceptions to the report of the commissioners which were overruled and the report was confirmed by the order from which we granted this appeal.

The appellees move to dismiss the appeal because of the alleged violation of Rule 5:1, § 3 (e) of the Rules of Court in preparing the record. They say that instead of having the reporter transcribe the testimony the appellant elected to present to the trial court a "Narrative of Proceedings" which was incomplete, misleading and inaccurate. They filed written objections thereto and presented to and had certified by the trial judge additional testimony which was included in the manuscript record.

Section 3 (e) of Rule 5:1 provides *inter alia* that oral testimony transcribed by a reporter "and any written statement of facts" become part of the record when delivered to the clerk, if it is signed at the end by counsel for all parties and tendered to and signed by the judge in the time prescribed. Section 3 (f) of that Rule provides that such a transcript or statement "not signed by counsel for all parties" becomes part of the record when delivered to the clerk, if it is tendered to the judge and signed by him within the prescribed time after reasonable written notice to opposing counsel.

The "Narrative of Proceedings" was apparently intended to comply with § 3 (f) of the Rule. There was appended to it a certificate

signed by the trial judge stating that it was tendered to him after notice to opposing counsel and "is authentic and is a correct statement of the proceedings to the best of my knowledge and belief." Such a written statement should, of course, fairly and accurately set forth the evidence material to the decision of the questions involved on the appeal. *Lawrence* v. *Nelson*, 200 Va. 597, 106 S. E. 2d 618. The defects alleged to exist in the present "Narrative" have been corrected by the additions made by the appellees, which they designated to be printed. Admittedly the printed record now contains all that is germane to the questions to be decided and the motion to dismiss is therefore overruled. *Jenkins* v. *Womack*, 201 Va. 68, 109 S. E. 2d 97.

The appellant made eight assignments of error but says that only two questions are involved on this appeal: (1) Whether the report of the commissioners should have been set aside because E. P. Whitman, one of the commissioners, was not qualified to serve; and (2) Whether the testimony of Richard L. Evans, with respect to what the appellant contends was an offer of compromise should have been admitted.

According to the record these are the facts and circumstances relating to the qualification of Commissioner Whitman:

On September 25, 1957, C. V. Jackson, president of New River Valley Airport Commission, wrote a letter addressed to E. P. Whitman, Chairman; C. E. Richardson, E. D. Spangler, Robert B. Harvey, and R. R. Harkrader, stating that the commission needed an independent appraisal of the lands to be acquired for the airport and desired "to be as fair as possible with the landowners and the participating political subdivisions in the amount paid for the land;" that the gentlemen named had been selected to perform "this important service" and "you were selected because of your knowledge of land values in the area and your standing in your community;" that they would be asked to meet on the call of the chairman, go upon the land and make their own independent appraisal, and the commission would pay all expenses involved in making the appraisal. There was attached a list of the landowners, the acreage and the names of the political subdivisions.

On October 4, 1957, the attorney for the airport commission wrote to Mr. Whitman enclosing a description of and statement as to the ownership and acreage of the tracts involved. Information or assistance was offered if necessary to expedite the work and the letter concluded "I wish to thank you and the other members of your Appraisal Committee for undertaking this work."

At or about the time of receiving these letters and enclosures Mr. Whitman became ill and was taken to a hospital where he remained for about five weeks. He gave these letters to his wife, who returned them to Mr. Jackson, and Mr. Whitman did not serve on the appraisal committee but the work was done by the other four members named in the letter to Mr. Whitman, along with a member appointed in his place.

On March 24, 1958, the court entered an order, to which all parties agreed, appointing Whitman and five other "disinterested freeholders" as commissioners in each of the six condemnation proceedings to determine the compensation for the lands to be taken, and providing that after their *voir dire* examination the court would strike one and the remaining five would serve.

This examination was had on April 15, 1958. In response to questions by the court, Mr. Whitman stated that his wife was a cousin of Mrs. Collins, the appellant. He was then asked, "Have you talked to anyone about the airport?" and he replied, "I have." Thereupon the court told him to stand aside. Another commissioner was questioned and directed to stand aside because of his relationship to the owners of a tract involved. The attorney for the appellees then requested the court to re-examine Mr. Whitman, stating, "You asked him if he had talked to anyone about it and you asked the others if they had talked to any landowner." The court then asked Whitman, "Have you talked to any landowner about this?" Whitman responded, "No, sir, I haven't talked to any landowner." Thereupon counsel for appellees said, "May we ask that he be put back?" After some questioning of the other commissioners the court said, "Mr. Whitman, you probably misunderstood this. You have talked about this generally. Have you formed any opinion or talked to anybody that would prevent you from going out there, viewing that property and forming an opinion?" He replied, "No, sir. From my wife's relationship or my brother, I'd give my own opinion." The court responded, "Nobody's saying that you could be influenced. We just don't want any criticism or anything that could influence." Mr. Whitman was thereupon reinstated and sworn as one of the commissioners.

The record shows that Mr. Dalton, attorney for the appellant, had not arrived when the above examination occurred. On his arrival he questioned the commissioners as to whether they might be influenced by some newspaper articles and they responded in the negative. The court then inquired from Mr. Whitman as to whom

he had discussed the matter with and he replied, "I don't know. Talked about it down at the Club." The court then inquired whether he had discussed it with any official of the political subdivisions and he said, "No, haven't talked to any landowner. Don't recall talking to any officials about it."

No reference then or at any time prior to the filing of the commissioner's report was made by Mr. Whitman or by appellees' counsel to the fact that he had been asked by the appellees to serve as chairman of their committee of appraisers.

Thereafter four commissioners, including Mr. Whitman, (another of the six having been struck off by the court), viewed the premises and heard the testimony. The evidence on behalf of the appellees was given by C. E. Richardson, one of the appraisers who had been selected along with Whitman to do this work. He testified that he and the other appraisers went upon the land and after consultation together they valued the land taken at $12,052 and the damage at $5,000. Thereafter, on April 17, 1958, the commissioners filed their report fixing $19,558.50 as compensation and damages as above stated. Mr. Whitman served as chairman of the commissioners.

The appellant filed exceptions to this report alleging among other things that the amount allowed was grossly inadequate; that Whitman was an incompetent commissioner because of his previous relationship to the appellees which she did not know about at the time, and that it was error to admit the testimony of Evans.

At the hearing on the exceptions Jackson, president of the airport commission, and Whitman were called as witnesses by the appellees. Jackson testified that he did not at any time discuss the matter with Whitman and he did not recall that "we" had any contact with or any commitment from Mr. Whitman as to whether he would serve as an appraiser. He was asked on cross-examination whether he had discussed with Whitman the fact that he had been asked to serve as chairman of the appraisal committee after the latter was released from the hospital and before the condemnation proceeding. He replied, "I am sure that I talked to him and told him I regretted that he could not serve but I don't recall any contact which had any bearing on the airport or that part of it."

Mr. Whitman was asked whether he discussed the matter with Mr. Jackson or any other member of the airport commission after he returned from the hospital and he replied, "No, I did not discuss

it with Mr. Jackson or I don't remember discussing it with Mr. Jackson."

Counsel for appellant concede that Mr. Whitman is a man of integrity, but they argue that his serving on the commission under the facts related violates the rule long prevailing in this jurisdiction that as a matter of public policy "commissioners and jurors should be kept free from every suspicion of influence by any party to the litigation." *Virginia Electric & Power Co.* v. *Pickett,* 197 Va. 269, concurring opinion by Mr. Justice Whittle at 281, 89 S. E. 2d 76, 84.

The power of *eminent domain* is a high prerogative and the prescribed methods of its exercise are to be carefully observed. Great weight is attached to the award of the commissioners and it is important that their judgment be not affected by relationship to the parties or other extraneous matters.

In *New River, Etc., Co.* v. *Honaker,* 119 Va. 641, 654-5, 89 S. E. 960, 964, an award was set aside because the commissioners were entertained by one having an interest in the case. The court said:

"We feel that the maintenance of public confidence in the integrity of reports of commissioners, acting under the statute and by appointment of court in the assessment of damages in condemnation proceedings, who are in truth in effect performing the duties of a jury in an *ad quod damnum* proceeding, is of such transcendent importance that the same rule applicable to juries should be applied; and that such reports should be kept free from the suspicion that the commissioners may have been influenced by any party to the proceeding, whether plaintiff or defendant, by furnishing the commissioners, or any of them who make such reports, with lodging or food or liquor, whether such influence was sought to be exercised or not, or in fact existed."

In *Virginia-Western Power Co.* v. *Kessinger,* 122 Va. 135, 146, 94 S. E. 186, 190, the court emphasized that it had no disposition to relax in any degree the rule established in the *Honaker* case, *supra,* and it was repeated that every precaution should be taken by the commissioners and by the courts to preserve public confidence in their findings, and "Neither they, however honorable men they may be, by careless and thoughtless disregard of the proprieties, nor others, whether acting designedly or with the purest of motives, should be allowed to so conduct themselves in any way as to cast suspicion upon the integrity of the commission or upon its decisions."

In *Griffin* v. *Tomlinson,* 155 Va. 150, 154 S. E. 483, the rule of the above cases was applied to commissioners of partition.

The case presented by the present record requires the application of this established rule. The result of the procedure was to place on the commission appointed to determine the compensation and damages due the appellant a man whom the appellees had sought to engage to appraise for them the value of the land they planned to take, with the purpose of having him testify on that question before the commission to be appointed. They had written to him a letter also addressed to the other members selected to tell him of their need for his services and designating him as chairman of the appraisal committee. In the letter they told him they were selecting him because of his knowledge of land values and his standing in the community. He was to call the other members to meet and go with him upon the land and was assured that his expenses would be paid by those who were seeking to employ him. A few days later the attorney for the appellees wrote a letter to him thanking him "and the other members of your Appraisal Committee" for undertaking this work. Having failed because of his illness in their effort to engage his services as an appraiser, they insisted that he be placed upon the commission which was to determine the question upon which they had previously sought his opinion and about which they had expected him to testify. They had proposed him as one of the commissioners and after he had been rejected by the court because of his relationship to the appellant, they asked the court to reinstate him. During his examination on his *voir dire* neither he nor the appellees nor their counsel informed the court or appellant's counsel of the effort of the appellees to engage him as one of their appraisers.

After it was found that Mr. Whitman could not serve as an appraiser they selected another to act with those who had been chosen to serve with him on the appraisal committee of which he had been named the chairman. This committee went upon the property, decided upon what value to place upon the land, and then Mr. Richardson, named next after Mr. Whitman in the letter and presumably serving as chairman of the committee in his place, testified before the condemnation commissioners, of which Mr. Whitman was chairman, as to the conclusions of that committee.

In the circumstances here shown the appellant was not required to show affirmatively that Mr. Whitman was in fact influenced in making the award by what had preceded his selection as commissioner. Prejudice will be presumed from these occurrences which

distinguish this case from those relied on by the appellees in which no prejudice existed.*

The remaining error assigned relates to the testimony of Richard L. Evans, which the appellant contends violated the rule against proving an attempt to compromise. *Duncan* v. *State Highway Commission*, 142 Va. 135, 128 S. E. 546; *Hendrickson* v. *Meredith*, 161 Va. 193, 170 S. E. 602.

Evans was the husband of a daughter of Mrs. Collins. He and his wife were made defendants in this case and filed grounds of defense in which they denied that the appellees had made an ineffectual effort to purchase, Code § 25-7, and asserted that they had in fact accepted an offer of the appellees to purchase the entire Collins farm, in which they owned an interest. This farm contained 504 acres. The part sought to be condemned was 174 acres and Mrs. Collins had testified that it was worth $600 an acre, including damage to the residue. In rebuttal Evans was called as a witness by the appellees and testified that he and his wife had accepted an offer of the appellees to purchase the whole 504 acres for $95,960. The court admitted the testimony on the ground that this was matter shown in the pleadings and the witness "can place his value on the property."

On the record before us this testimony was inadmissible. It is generally the rule that the sum paid by the condemnor for similar land is not admissible because it is usually not a fair indication of market value. 18 Am. Jur., Eminent Domain, § 352, p. 996; Annotations, 118 A.L.R. at 893 and 174 A.L.R. at 395. This rule of exclusion applies unless the offering party produces evidence sufficient to established that the sale was not by way of compromise but voluntary and free from compulsion. *Seaboard Air Line Ry.* v. *Chamblin*, 108 Va. 42, 49, 60 S. E. 727, 730; *Albert Hanson Lumber Co.* v. *United States*, 261 U. S. 581, 67 L. ed. 809, 43 S. Ct. 442, 445; *Washington Home for Incurables* v. *Hazen*, (D.C. Cir.), 70 F. 2d 847; *Amory* v. *Commonwealth*, 321 Mass. 240, 72 N. E. 2d 549, 174 A.L. R. 370, 384; 5 Nichols on Eminent Domain, 3 ed., § 21.33. There was no evidence here to establish these essentials.

The judgment appealed from is reversed, the award of the commissioners is set aside, and the case is remanded for further proceedings.

*Reversed and remanded.*

---

* *Roanoke City* v. *Berkowitz*, 80 Va. 616; *Tidewater Ry. Co.* v. *Cowan*, 106 Va. 817, 56 S. E. 819; *Hannah* v. *City of Roanoke*, 148 Va. 554, 139 S. E. 303; *Virginia Electric & Power Co.* v. *Call*, 195 Va. 454, 78 S. E. 2d 670.