**CIRCUIT COURT OF CLARKE COUNTY**

Highway Commissioner

    v.

McIntyre et al.

November 2, 1973

By JUDGE ROBERT K. WOLTZ

The petitioner in the above condemnation suits filed exceptions in each case to the report of the Commissioners on ground that the awards were grossly excessive; that they were contrary to the law and the evidence and without evidence to support them; and for failure of the court to strike from the panel of Commissioners one Carlton Emmart on the ground he was not a person disinterested in the proceedings within the meaning of the statute.

It is my opinion that the awards were not grossly excessive, contrary to the law and the evidence or without evidence to support them. The awards were not in an amount such as would indicate any fraud, misconduct or misapprehension of the law by the Commissioners; they were each rendered after views by the Commissioners and within the range of testimony adduced at the trial.

The principal argument urged by the petitioner is that the Commissioner, Carlton Emmart, was not a "disinterested" freeholder as provided in § 33.1-107 in force at the time the suits were instituted. (That section was repealed by Acts of 1972 but the same word and substantially the same provisions appear in present § 25.46-20.)

At the request of petitioner's counsel, the court conducted voir dire of the panel, which was of considerable detail after receiving significant response from the Commissioner mentioned above. Unfortunately for some

inexplicable reason, the reporter who was present omitted to take down any of the voir dire.

The two cases involve taking for highway purposes of a portion of each of two separate parcel of land, one being owned by McIntyre alone and the other being owned by McIntyre and his wife jointly.

In response to questions by the court, the panel member in question stated that he was a member of the Board of Directors of Northern Virginia Livestock Producers, Inc., that McIntyre was a former director of the organization and presently was its sales manager, that the purposes of the organization were to promote the interests of beef cattle farmers in the surrounding area particularly by organizing and conducting sales several times a year of various classes of beef animals owned by the membership of the corporation, and that McIntyre as manager serves as a paid employee of the organization. On further close questioning by the court, the prospective Commissioner gave his assurance that this relationship between him and the landowner created no bias in his mind, that he would be uninfluenced thereby in his judgment of the matter, and that he could give fair and impartial judgment therein. It was implied if not expressed in the answers given on voir dire that the landowner's position as manager was a part-time employment. This is confirmed by the fact that the larger of the two parcels involved (the smaller parcel before the take having been his residence with curtilage) was a farm of some size operated by the landowner himself.

The court explored at some length this business relationship involving the panel member, the livestock association and the landowner, and its later questions directed specifically to the matter of the panel member's disinterest were quite pointed, and to all questions propounded, the panel member answered straight forwardly without hesitation or equivocation and with no apparent mental reservation.

Based on the relationship disclosed, the substance of the answers, the manner in which they were given, and the demeanor of the panel member during his examination, the court was satisfied of his disinterest and denied the petitioner's motion to remove for cause.

Public confidence in the administration of justice demands that it neither be infected with wrong doing, bias, prejudice, or interest nor tainted with any suspicion of these infections. Because of the great weight accorded the findings of condemnation commissioners, their judgment must be free from any influence stemming from their relationship to the parties or otherwise. *Collins v. Pulaski County*, 201 Va. 164 (1959). Preservation of public confidence in their findings requires the use of every precaution to assure their freedom from interest and bias. *May v. Crockett*, 202 Va. 438 (1961). Both these cases are authority for the proposition that the same rules apply as to disqualification of commissioners as do to jurors. One of those rules is that disqualification is a matter for the sound discretion of the trial judge. *Temple v. Moses*, 175 Va. 320 (1940).

Undeniably a relationship existed between the commissioner and the landowner resulting from their common economic interest in the pursuit of their vocations. This interest, however, was stronger than a mere following of common vocations, being bonded to some degree by a formalization in tacit recognition that their vocational interests and those of others were parallel. Both along with others were associated together in an organization, the purpose of which was to promote those interests, one closely associated with the organization as a director and the other closely associated as a former director and present responsible employee of the organization.

Prima facie such relationship might call for disqualification of the commissioner. Nevertheless, I am persuaded that the facts of the relationship are not such as existed in *Collins v. Pulaski County, supra,* where the circumstances raised a presumption of prejudice so that the objecting party was not required to show affirmatively that the commissioner was actually influenced. The foregoing circumstances in the case at bar do raise a possible inference of bias, but countervailing circumstances, especially when coupled with the demeanor and responses of the panel member on voir dire, overcome this initial inference.

The countervailing circumstances are the organization involved is not a business, commercial, or industrial corporation in the usual sense of the word, but is more in the nature of a trade association, operated to promote

and assist its members in their economic pursuits. No true direct master-servant relationship exists as the landowner was the employee of the association and the commissioner was only one of the governing body of the association. To whatever extent a master-servant relationship can be made out, at least it does not partake of a servant-master relationship which might subject the servant to improper influence or the suspicion of it. Neither individual devoted full time to his official duties with the organization which is merely an auxiliary to their full time or primary pursuits. There was no indication that the landowner in his official capacity with the association was in a position either to favor or disfavor the commissioner and his legitimate interests over any other member of the organization.

The relationship of the landowner and commissioner to the association and through it to each other forms a nexus too insubstantial upon which to base a disqualification for bias, prejudice, or interest when all the circumstances of the matter and the attitude and responses of the commissioner on voir dire are considered and weighted. Nor do any such disqualifying factors make themselves apparent in the amount of the awards of the commission.

Counsel for the landowner cites in support of the court's action two federal condemnation cases, *United States v. Certain Parcels of Land*, 384 F.2d 677 (4th Cir. 1967), and *United States v. Lewis*, 308 F.2d 453 (9th Cir. 1962). While federal condemnation procedures vary materially from those of Virginia, both cases found that the commissioners were qualified in circumstances which would appear to form a stronger basis for disqualification than in the case at bar. Additionally, each of these cases serves to buttress the principle that the matter of disqualification is one of discretion resting with the trial judge. For the foregoing reasons, the exceptions taken to the report of the commissioners in each case are overruled.