# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## VIRGINIA-WESTERN POWER COMPANY V. W. T. KESSINGER AND ANOTHER.
## VIRGINIA-WESTERN POWER COMPANY V. ANNIE P. KESSINGER AND OTHERS.

November 15, 1917.

Absent, Prentis, J.

1. EMINENT DOMAIN—*Instructions as to Duties of Commissioners.*—In eminent domain proceedings the statute (subsection 6 of section 1105-f, Code of 1904), is sufficiently specific as to what are the duties of the commissioners in the premises, and if the orders of court, appointing commissioners substantially contain instructions as to what all of such duties are as prescribed by statute, as they did in the instant case, that is sufficient; and the trial court may, and properly should, refuse to give any further instructions defining what such duties are. But as to the manner in which the commissioners should discharge their statutory duties, it would be helpful to the commissioners and greatly tend to the proper discharge of their duties if the courts appointing them would, on their own motion, or upon request of any party to the case, instruct the commissioners as to what character of testimony and argument or statements of counsel are admissible or inadmissible before them; and caution them not to discuss the case in any aspect of it with any one other than among themselves or allow it to be discussed in their presence, except when together assembled for and engaged in the discharge of their duties in public as commissioners as the statute provides.

2. EMINENT DOMAIN PROCEEDINGS—*Notice to Commissioners of Their Appointment.*—The practice of counsel in a case notifying the commissioners of their appointment in condemnation proceedings should be discontinued. The notice of their appointment and of the date fixed for the view, should be communicated to the commissioners (or to the minimum number authorized to act, if only such number is desired to act), by the clerk or other disinterested person, as the order of court may especially direct by consent of all parties to the case, or

in the absence of such consent by a certified copy of the order being delivered to the commissioners by the sheriff of the county or sheriff or sergeant of the city in the court of which the proceedings are had.

3. EMINENT DOMAIN—*Entertaining Commissioners—Case at Bar.*— In eminent domain proceedings counsel for the land owners arranged with the husband of one of the landowners for the entertainment at dinner of the commissioners and counsel at his house, before viewing the premises or making a report of their findings. This arrangement became known to at least two of the commissioners before the arrival of the senior counsel for the corporation seeking to condemn the land. Upon the arrival of the senior counsel for the corporation, counsel for the land owners informed him that the husband had been directed "to prepare dinner for everybody who was there if it was agreeable to him." The senior counsel replied that he was very glad that this had been done. Counsel for the corporation when he consented to the arrangement was unaware of the decision in *New River, etc., Railway Company* v. *Honaker*, 119 Va. 641, 89 S. E. 960, Ann. Cas. 1917C, 132.

*Held:* That, there was error in the action of the trial court in overruling an exception on the part of the corporation to the report of the commissioners, on the ground that they had been entertained by the land owners.

4. EMINENT DOMAIN—*Entertaining Commissioners—Case at Bar.*— If prior to the possibility of any information of it having reached any of the commissioners, the land owners or their counsel had conferred with the company or its counsel on the subject, and the company, in person or by counsel, had consented to the entertainment being given, a different case would be presented, to which the rule in *New River, etc., Railway Company* v. *Honaker*, 119 Va. 641, 89 S. E. 960, Ann. Cas. 1917C, 132, might not apply.

5. EMINENT DOMAIN — *Entertaining Commissioners — Estoppel — Case at Bar.*—As counsel for the company had but scant time for reflection and besides did not then know of the recent ruling in *New River, etc., Railway Company* v. *Honaker*, 119 Va. 641, 89 S. E. 960, Ann. Cas, 1917C, 132, it would not be just or right to apply any rule of estoppel or waiver in the instant case.

Error to a judgment of the Circuit Court of Botetóurt county, overruling plaintiff's exceptions to a commissioner's report in proceedings to condemn land.

*Reversed.*

## STATEMENT OF THE CASE AND FACTS.

These two causes are proceedings under the statute by the plaintiff in error, a public service corporation (hereinafter referred to as power company), to condemn an easement or right of way for an electric transmission line of the power company across the land of the defendants in error (hereinafter referred to as land owners), including the right of ingress to and egress from such right of way.

There was a view and report of commissioners appointed by the court below acting under the statute on the subject. There were five exceptions taken by the power company to such report, which are made the ground of the assignments of error before us. These five exceptions were as follows:

"(1) Because the commissioners were not properly instructed as to the elements of damage they were to take into consideration."

"(2) Because of improper statements of counsel for the condemnees made before the commissioners while viewing the premises and before their report was signed."

"(3) Because the commissioners, before viewing the land or making their report were interviewed and talked to with reference to the matters they were to pass upon and the findings they were to make, by counsel for the condemnees."

"(4) Because the commissioners were entertained and treated by the condemnees before viewing the premises or making the report of their findings."

"(5) Because the compensation fixed and the damages allowed by the commissioners are grossly excessive and can, in no sense, be regarded as 'just' as contemplated by the statute."

As, in the view we take of the causes, there was reversible error in the action of the court below upon the fourth exception to said report. it will be unnecessary for us to consider the second or fifth exceptions above noted, since it is

not likely that the statements of counsel before the commissioners on their view which were excepted to, will again occur, and the damages allowed may not be the same on a future view of commissioners.

We deem it proper, however, to make some observations touching the first and third exceptions aforesaid, and we feel constrained to reverse these causes upon the fourth exception aforesaid, and, hence, the material facts bearing upon such exceptions will be stated.

## THE FACTS.

1. With reference to the first exception to the report of the commissioners:

The orders in these causes appointing the commissioners aforesaid contained, substantially, instructions as to all of their duties which are prescribed by statute (subsection (6) of section 1105-f, of Pollard's Code of Virginia).

No other instructions were asked of the court below.

2. With respect to the third exception to the report of the commissioners:

(a) Both counsel for the power company and counsel for the land owners communicated with the commissioners after their appointment by the court, notifying them of their appointment and urging them to attend the view. Counsel for the power company had such communication by letters written to the commissioners, counsel for the land owners had such communication by letters to some of the commissioners and in person with others of them. The evidence does not disclose that counsel on either side intended to or did go beyond such mere notification and request of the commissioners. But suspicion was aroused by the verbal private communications of counsel for the land owners with commissioners after their appointment, and there was a misun-

derstanding of what was said by such counsel to two of the commissioners and one of such commissioners himself, at one time, misunderstood what was thus said to him.

(b) With respect to a statement made by counsel for the land owners to one of the commissioners on the morning of the day of the view of the land, the facts are these:

Mrs. Penn owned one of the tracts of land affected by said right of way and an undivided half interest in the other. Mrs. Annie P. Kessinger owned the other half interest in the latter tract. Prior to the condemnation proceedings the superintendent of the power company reached an agreement with and obtained a deed from such owners of such land, purporting to convey said right of way over both tracts of such land for the consideration of $364.52, plus compensation for whatever damage might be done by the construction of the line. The amount of the latter was to be settled by arbitration in case there was failure of mutual agreement thereon. There was such failure of agreement. Two arbitrators were selected who met but were unable to agree on such damages. Pending the action of such arbitrators, it developed that Mrs. Penn was *non compos mentis.* This resulted in an understanding that the power company would not rely upon said deed, but would convey the right of way back to said owners and would proceed under the statute to obtain same by condemnation proceedings, reserving, however, the right to use the right of way meanwhile, without prejudice, until the title could be obtained by such proceedings. Accordingly such a conveyance back to such land owners was executed on September 11, 1916. The power company promptly instituted the said condemnation proceedings; the commissioners were appointed by the court as aforesaid; October 25, 1916, was fixed in the order of court for the view of the land by the commissioners, and they accordingly met at Springwood, the railway station

near the residence of the said land owners, on such last named date. Counsel for both sides also attended such meeting.

Pending the said occurrences, and prior to October 25, 1916, the power company had proceeded with the construction of its said line and had completed such construction across the said two tracts of land.

The train bringing the senior counsel for the power company being somewhat late, such counsel did not arrive at said place of meeting of the commissioners on October 25, 1916, until some time after the commissioners and other counsel had arrived. While awaiting the arrival of the said senior counsel for the power company, one of the commissioners, seeing that the said line was already constructed on the land before the commissioners had acted, asked one of the counsel for the land owners how that had occurred, and this commissioner, in his testimony on the subject, says that said counsel for the land owners replied to his enquiry and "told (him) how the line had been built and no commission on it;" that in such reply such counsel stated that "the power company had bargained with Mrs. Penn for a right of way," and "agreed to pay $500.00" for it as witness "understood" counsel to say; that said counsel "went on to say why the parties were not satisfied with the damage that Mrs. Penn had agreed to take, from the fact that her mind was not altogether right; that she was not capable of making a contract;" that such counsel did not say that the land owners were not satisfied with the amount that had been agreed upon; that such counsel did not say a word in that statement to witness as to "what amount he thought ought to be allowed" the land owners; and that neither of counsel for the land owners (there being two) made any statement to witness "endeavoring to influence" him.

The counsel for the land owners who replied to the enquiry of the commissioner aforesaid testified "I have no

recollection of the conversation with" (the commissioner) "but I do not doubt that it occurred because" (the commissioner) "is a man who would not make any statement on a subject that was not correct. He, however, must be clearly mistaken about the amount that I told him was the consideration of the conveyance, because I knew then the amount was less than $500.00 and it is inconceivable that I would have said to him that it was $500.00 when I knew that it was not."

The damages done by the construction added to the said $364.52 might easily have made the total damage, which the power company agreed with Mrs. Penn to pay, amount to $500.00 and this was doubtless the conclusion of the commissioner referred to, from a correct explanation to him by counsel of the land owners of what had occurred.

3. With respect to the fourth exception to the report of the comissioners:

The facts are that feed for the horses of the commissioners who came by private conveyance was furnished by the land owners and such horses were put away and fed by such commissioners in the stable or on the premises of the land owners while the commissioners were taking dinner, before they viewed the land. That all of the commissioners as well as all counsel, both for the power company and land owners, were entertained by the land owners at dinner and with cigars following it, before the commissioners proceeded with the view of the land.

As bearing on the question of whether the case is taken from under the ruling of this court on the subject in *New River, etc., Railway Co.* v. *Honaker*, 119 Va. 641, 89 S. E. 960, Ann. Cas. 1917C, 132, the following is a summary of the material facts:

These condemnation proceedings were friendly in their nature. Many of the steps in the proceedings were taken by mutual consent of the parties on both sides, by counsel.

At the meeting of the arbitrators above referred to, not long before (which was at Springwood in the same vicinity with the place of meeting of said commissioners), the arbitrators and parties were engaged all day until late in the afternoon and did not get anything to eat or have their horses fed, except that crackers from a store there were gotten by one of counsel for the power company for his lunch. There was a place at Springwood (where the commissioners met as aforesaid) where the counsel and commissioners could have gotten dinner for themselves and had their horses fed at a house of entertainment where such entertainment was furnished to the public and where a good table was usually set, but counsel for the land owners did not know about that. It was at the instance of counsel for the land owners that the entertainment aforesaid was furnished and the motive of counsel was solely a hospitable one so far as the commissioners were concerned and to avoid the discomfort they thought would otherwise be entailed upon the commissioners and all of the counsel in the causes, including themselves.

Accordingly, in advance of the day of the view aforesaid, counsel for the land owners told the husband of one of the land owners about the situation that had occurred at the meeting of the arbitrators and that such a condition ought not to exist among gentlemen, such as were involved in these causes, and that he ought to have dinner prepared for the commissioners and for counsel for the power company and all of its officers who might be present, for counsel for the land owners and for the witnesses who might be there. The husband aforesaid objected to doing this, on the ground that his wife's health was not as good as it ought to be and that it was a good deal of labor to get dinner for such a crowd, but counsel for the land owners insisted that there was no place for these people to get anything to eat, that they lived a long distance away and they ought to have their

horses fed and have something to eat; but told the husband that none of them would take dinner unless all took dinner. The husband then undertook to prepare for and give the entertainment, which was accordingly given, as aforesaid.

No information was given to counsel for the power company in advance of the day of the view that such entertainment was proposed nor was their consent thereto asked before that day or before the arrival of the commissioners and all of counsel at Springwood on such day, October 25th, aforesaid.

While the commissioners were at Springwood during the morning of the day of the view awaiting the belated arrival of senior counsel for the power company, the evidence tends to show that, through information not derived from counsel for the land owners, at least two of the commissioners became aware of the fact that said entertainment had been provided for them and all present by the land owners. The presumption under the circumstances is that such fact became generally known to the commissioners and others that morning before the arrival of senior counsel for the power company. Counsel for the land owners however, did not know of such information having gotten out, and they awaited the arrival of senior counsel for the power company before mentioning the fact, and upon the arrival of the belated counsel for latter, counsel for the land owners met the senior counsel as he was walking from the depot, and walking along with him in a space of some thirty or forty steps before they came to the assemblage of the commissioners and others, stated that the said husband had been directed "to prepare dinner for everybody who was there if it was agreeable to him." The latter replied that he was very glad this had been done. They by that time had reached the assemblage aforesaid and counsel for the land owners announced to the commissioners and others that said husband "had prepared dinner for everybody and everybody was invited to take dinner at his house." The

question then arose as to whether they would begin work before or after dinner. Counsel for the land owners suggested that they do their work first and eat dinner afterwards. The said husband objected that the dinner would get cold and that he didn't like to keep the women folks waiting. Senior counsel for the power company then suggested that they go and eat dinner first, which was done. The above statement has been taken almost verbatim from the testimony of the senior counsel for the land owners.

The senior counsel for the power company also testified in the case and does not controvert the above. He, however, adds to his statement on the subject the following: "I raised no objection to it at that time. I had no objection to raise. I did not know that the Supreme Court of the State had put its ban upon that kind of procedure. I had confidence in the commissioners, that they would not be influenced by it although we all know that it is a matter of humanity that cannot be helped, I care not how fair or honorable the man may be, that a man cannot get up from a table and go out and put a value upon the land of his host with his host's cigar in his mouth, and do it in such a way as to do absolute justice to all parties concerned. The case which has settled this as a law of the State of Virginia was at that time, so far as I know, in the press, and the first I knew about this case was in the advance sheets of those reports which I had not seen and of which decision I did not know and am willing to put into the record regardless of how it may have affected me with the commissioners, had I known that this was the view that the Supreme Court took of such matters I would have made the objection and given the opportunity for these commissioners to pass upon this under other circumstances than those under which they did."

*F. W. King*, for the plaintiff in error.

*Haden & Haden*, for the defendants in error.

Sims, J., after making the foregoing statement, delivered the following opinion of the court:

The first, third and fourth exceptions above noted will be considered in their order as stated below.

1. In regard to the first (1st) exception, as these causes have to go back to the court below for further proceedings and the same question will probably arise concerning what, if any, instructions the trial court, if asked by either party, should give to new commissioners in such proceedings, we deem it proper to say that we think the statute on the subject (subsection (6) of section 1105-f, Pollard's Code), is sufficiently specific as to what were the duties of the commissioners in the premises, and that if the orders of court, appointing the commissioners substantially contain instructions as to what all of such duties are as prescribed by statute, as they did in the instant case, that is sufficient; and the trial court may, and properly should, refuse to give any further instructions defining what such duties are. A contrary rule would tend to the presentation to trial courts of lengthy commentaries on the statute law involved and the urging of same upon the court for the adoption, and the simple and plain meaning of the statute might be obscured rather than elucidated thereby, and the result might be confusing to the commissioners instead of being helpful to them in informing them of their duties. Not so, however, as to the *manner* in which they should discharge their statutory duties. We think it would be helpful to the commissioners and greatly tend to the proper discharge of their duties if the courts appointing them would, on their own motion, or upon request of any party to the case, instruct

19

the commissioners as to what character of testimony and argument or statements of counsel are admissible or inadmissible before them; and caution them not to discuss the case in any aspect of it with any one other than among themselves or allow it to be discussed in their presence, except when together assembled for and engaged in the discharge of their duties in public as commissioners as the statute provides. These commissioners practically discharge the duties of juries, as we had occasion to remark in effect in the case of *New River, etc., Railway Co.* v. *Honaker, supra,* and every precaution should be taken by such commissioners and by the courts to preserve public confidence in their findings. Neither they, however honorable men they may be, by careless and thoughtless disregard of the proprieties, nor others, whether acting designedly or with the purest of motives, should be allowed to so conduct themselves in any way as to cast suspicion upon the integrity of the commission or upon its decisions.

2. In regard to the third (3rd) exception aforesaid:

While we are satisfied that there was no private communication between counsel for the land owners and any of the commissioners which was intended to improperly influence the later or which did so, yet we think the practice of counsel in a case notifying the commissioners of their appointment in condemnation proceedings should be discontinued. It is a position in which counsel should not be put or put themselves. It is a difficult position to fill with absolute absence of some expression which may have or seem to have the ulterior object or effect of inducing a special feeling of favor on the part of the commissioner communicated with toward counsel having the communication and his client, especially when the communication is verbal, and only in a less degree when it is in writing. The notice of their appointment and of the date fixed for the view should be communicated to the commissioners,

(or to the minimum number authorized to act, if only such number is desired to act), by the clerk or other disinterested person, as the order of court may specially direct by consent of all parties to the case, or, in the absence of such consent, by a certified copy of the order being delivered to the commissioners by the sheriff of the county or sheriff or sergeant of the city in the court of which the proceedings are had.

3. In regard to the fourth (4th) exception aforesaid:

The causes before us fall within the rule on the subject laid down in the case of *New River, etc., Railway Co. v. Honaker, supra,* unless it can be distinguished on the ground that the entertainment of the commissioners in the instant cases was by the free and untrammelled consent of all parties, by counsel.

There are but few things which may not be done in civil causes by consent of all parties who are affected.

If prior to the possibility of any information of it having reached any of the commissioners, the land owners or their counsel had conferred with the power company or its counsel on the subject, and the power company, in person or by counsel, had consented to the entertainment being given, a different case would be presented, to which the rule aforesaid might not apply. But for reasons of public policy which rise above all personal considerations, or considerations of the effect in particular cases, we have no disposition to relax in any degree the rule referred to as heretofore established. And it is manifest that in any case where information has come to commissioners in condemnation proceedings that entertainment has been provided for them by parties to the proceedings before counsel for other parties thereto have been informed of the proposed entertainment and their consent thereto is asked, the latter and their client are not in a position to refuse such consent untrammelled. If they refuse consent they are taking

an attitude which would inevitably be offensive to the commissioners, because indirectly reflecting upon their integrity. The risk of injurious result is obvious. And since the evidence in the proceedings before us tends to show that the situation predicated in the next preceding sentence existed when said consent was asked as aforesaid, we do not think that the rule referred to should be relaxed in the instant causes, and we feel that to do so would be to establish an unwise precedent. It is true that while counsel for the power company urge this position in the petition and in their brief, they did not take it at the time consent was asked to the proposed entertainment. But counsel was given but scant time for reflection and besides did not then know of the then recent ruling of the court aforesaid, and it seems to us that it would not be just or right to apply any rule of estoppel or waiver of right to such a case.

For the foregoing reasons we are constrained to the opinion that there was error in the action of the trial court in overruling the fourth exception aforesaid to the report of the commissioners for which these causes must be reversed. The judgments complained of will therefore be set aside and annulled and these causes remanded to the court below for further proceedings to be had therein not in conflict with the views expressed in this opinion.

*Reversed.*