## Richmond

CLAUDIE L. EDWARDS, ET AL. v. STATE HIGHWAY COMMISSIONER OF
VIRGINIA.

January 18, 1965.

Record No. 5810.

Present, Eggleston, C. J., and Spratley, Buchanan, Snead, I'Anson and Carrico, JJ.

*Morris H. Fine* (*Fine, Fine, Legum, Schwan & Fine*, on brief), for the plaintiffs in error.

*M. Ray Johnston, Assistant Attorney General (Robert Y. Button, Attorney General; Paul D. Stotts, Assistant Attorney General,* on brief), for the defendant in error.

SPRATLEY, J., delivered the opinion of the court.

On July 9, 1962, the State Highway Commissioner instituted eminent domain proceedings against Claudie L. Edwards and Virginia Edwards, his wife, landowners, for the acquisition of a portion of their property in connection with the construction of Interstate Route 64 in the city of Norfolk. Code of Virginia, §§ 33-57 to 33-75, as amended, 1964 Cum. Supp.

On September 6, 1962, the landowners, pursuant to § 8-320 of the Code of Virginia, 1950, served upon the Commissioner interrogatories seeking the names and addresses of all the persons who appraised their property and the amount of each such appraisal. A motion to quash the interrogatories was granted by the trial court. The landowners excepted.

The evidence is not greatly in conflict.

The Edwards' property fronted 65 feet on Denison avenue and had an average depth of 121 feet. It is in a residential subdivision known as Chesapeake Manor Gardens, Section II. The subdivision contains 315 houses of substantially similar construction on lots of approximately the same size. The Edwards' property was improved by a one-story, frame, one-family dwelling, and their lot of land contained approximately 7,884 square feet, of which the Commissioner sought to acquire 6,534 square feet.

Two witnesses testified for the Commissioner. The first testified only as to the location and size of the Edwards' property and the area proposed to be taken. The second witness for the Commissioner was Rodman S. Lamorelle, a real estate appraiser, who testified that the fair market value of the entire property of the landowners as of the day of taking, June 13, 1962, was $9,650.00. He broke his evaluation down, saying that he allowed $1,625.00 for the land and $8,025.00 for the improvements. He said that the value of the land and improvements proposed to be acquired by the Highway Commissioner was $9,397.00, and the damage to the residue of the property amounted to $252.00, a total of $9,649.00. He stated that $1.00 was the "nominal value" of the residue of the land after the taking. He supported his appraisal by listing six sales of comparable properties in the same subdivision which took place in the years 1958, 1959,

1961 and 1962, at prices ranging from $8,300.00 to $10,400.00. He explained that the difference in the prices was due to the nature of the improvements on the respective parcels of land and the condition of the properties. He further testified that the Edwards had purchased their house and lot in May, 1955 for $9,200.00 and had made some improvements thereon; but that after allowing a fair depreciation for the ensuing years, the value of the whole property was not in excess of $9,650.00.

On behalf of the landowners, Saul Salzberg, a real estate appraiser, testified that he thought that the Edwards' property was worth $10,750.00. Breaking his figures down, he valued the building and improvements at $8,800.00 and the land at $1,950.00. He said that he had "inspected fourteen comparable" sales, but listed only three in the evidence, one of which included the $10,400.00 sale reported by Lamorelle, one a sale in 1956 for $9,900.00 and the third, a sale in 1957 for $10,500.00.

Claudie L. Edwards testified that after he moved to the property in June, 1955, he spent approximately $1,000.00 in improving the building and surrounding grounds. He did not testify as to any depreciation.

Out of the hearing of the commissioners, Henry W. Sutton, a witness presented by the landowners, stated that he formerly lived directly across the street from the Edwards' property; that his property there had been taken by the Highway Commissioner in the construction of Route 64; that after it had been taken, he purchased another lot three blocks from the Edwards' property, located at 959 Widegon Road, in March, 1962, for $6,000.00; and that his new lot contained an area slightly larger than that of the Edwards' lot. He made no comparison of his new lot with the Edwards' property in any other respect. He did not undertake to show his qualification to compare the value of the respective properties. Admittedly his purchase was subsequent to the proceedings by the Highway Commissioner to construct, alter and improve the adjacent Interstate Route 64. The trial court refused to permit the testimony to go before the commissioners, and the landowners excepted.

The commissioners, after hearing the evidence, were fairly and fully instructed by the court, without objection. They returned an award of $9,450.00 as just compensation for the land taken and $250.00 as damages to the residue of the property, a total of $9,700.00.

The court overruled exceptions taken by the landowners to the report of the commissioners; thereupon ratified and confirmed the

report, and entered judgment accordingly. On appeal, the landowners make three assignments of error. They contend that the court erred: (1) in quashing the interrogatories; (2) in allowing testimony as to the price the Edwards paid for their property; and (3) in refusing to allow Sutton to testify concerning his purchase of a lot. No specific complaint is made that the amount of the award is inadequate.

The principles of law applicable here are well established in this jurisdiction.

## I

There is no merit in the assignment that the court erred in sustaining the motion of the Commissioner to quash the interrogatories. The contention is negated by our decision in the recent case of *Hornback* v. *State Highway Commissioner*, 205 Va. 50, 135 S. E. 2d 136. In that case, Mr. Justice Carrico carefully and logically set out at length the reasons why a landowner may not invoke Code, §§ 8-320 and 8-324 in a condemnation proceeding to compel disclosures of values made by appraisers to the Commissioner, or expose records of the Commission.

## II

Was it error to allow evidence of the price paid for the property by the landowners seven years prior to the institution of this proceeding, and of prices in sales of comparable property between the years 1956 and 1962? We think not under the circumstances here.

"Evidence as to other sales in the same locality is admissible if they are close enough in time and on a free and open market so as to permit a fair comparison." *Highway Commissioner* v. *Crockett*, 203 Va. 796, 798, 127 S. E. 2d 354; *Virginia Electric and Power Company* v. *Pickett*, 197 Va. 269, 276, 89 S. E. 2d 76; 6 Mich. Jur., Eminent Domain, § 88, page 776.

The question of the admissibility of prior sales of comparable property is one left largely to the discretion of the trial courts. It is, however, generally recognized that free and voluntary sales of the property involved and of similar property at any reasonable time in the past is relevant evidence on the issue of present value.

In 18 Am. Jur., Eminent Domain, § 351, pages 994, 995, this is said:

"When a parcel of land is taken by eminent domain, it is competent, as evidence of its market value, to show the price at which it was bought, if the sale was a voluntary one, and not so remote in time as to have no bearing upon the question of present value. * * * It is also required that the proof must first show that the lands so sold were similar in locality and character to the land in question. *The determination of the similarity of the lands involved in the proffered evidence to those sought to be condemned, and whether the transactions are sufficiently close in point of time to afford a fair comparison, is a matter resting largely in the discretion of the trial court.*" (Emphasis added.)

The comparable sales presented in evidence by the Commissioner for the years 1958, 1959, 1961 and 1962, as well as the purchase price paid by the landowners in 1955 for their property show that there was little increase or decrease in the value of the land within the area which contained the landowners' property. It is also significant that Salzberg, the appraiser for the landowners, listed comparable sales in 1956 and 1957, at prices only slightly different from those reported by Lamorelle. The landowners having themselves introduced such evidence should not now be heard to object to its consideration. *Seaboard Air Line Railway* v. *Chamblin*, 108 Va. 42, 50, 60 S. E. 727.

### III

The court did not err in refusing to allow Sutton to testify before the condemnation commissioners as to the lot which he purchased, located three blocks from the Edwards' property, after these proceedings had begun for the improvement of the highway. There is nothing in the record to show that the newly purchased land of Sutton was similar in character, availability or marketability to the land of the Edwards. Mere proximity is not the sole test. There are many circumstances which enter into the worth of land other than its location, such as an enhancement in value due to projected improvements, an increase not allowable in eminent domain proceedings. *United States* v. *Miller*, 317 U. S. 369, 376, 63 S. Ct. 276, 87 L. ed. 336, 147 A. L. R. 55.

The report of the commissioners is amply supported by the evidence. We find no error in the rulings of the trial court. Consequently, the judgment confirming the award of the commissioners is

*Affirmed.*