Opinion.

## Richmond

STATE HIGHWAY COMMISSIONER OF VIRGINIA v. S. J. BELL.

April 28, 1969.

Record No. 6946.

Present, All the Justices.

*Paul D. Stotts*, Assistant Attorney General (*Robert Y. Button*, Attorney General; *Kelly E. Miller*, Assistant Attorney General, on brief), for appellant.

*John T. Hazel, Jr.* (*Hazel, Beckhorn and Hanes*, on brief), for appellee.

CARRICO, J., delivered the opinion of the court.

This appeal involves the question of the measure of compensation to be applied where the State Highway Commissioner changes the official design of a highway project, necessitating the taking of a second parcel of land from the same landowner, and such second parcel has been enhanced in value by reason of the original project.

On October 9, 1964, the Highway Commissioner acquired title to the first parcel of land when he filed in the clerk's office of the Circuit Court of Fairfax County a certificate of deposit reciting the taking of 34,421 square feet of the property of S. J. Bell, the land-

owner, and calling for the payment therefor of $6,660.00. In November, 1964, a petition was filed by the Highway Commissioner praying that commissioners be appointed to determine just compensation for the land taken and damages, if any, to the residue.

On February 15, 1966, title to the second parcel involved was acquired by the filing of a certificate of deposit listing 10,399 square feet as the amount of land taken and $2,288.00 as the amount of compensation to be paid therefor. On February 24, 1966, a petition was filed by the Highway Commissioner asking that commissioners be appointed to determine the just compensation to be paid for the land so taken and the damages, if any, to the residue.

The Highway Commissioner and the landowner reached agreement as to the amount of compensation to be paid for the land taken under the first certificate. The settlement included no compensation for damages to the residue remaining after the first taking.

The Highway Commissioner and the landowner were unable to reach agreement with regard to the land taken under the second certificate. However, they entered into a stipulation in which they agreed to request the trial court to rule, prior to trial, upon the question of "whether or not the property is to be valued as of the [date of taking], including all enhancement accruing from the original project, or whether or not the landowner is not to be entitled to any enhancement so resulting."

Pursuant to the stipulation, the trial court heard the evidence upon the stipulated question and ruled in favor of the landowner, holding that "the real property . . . which is the subject of this cause should be valued as of the date of the filing of the certificate of deposit including any effect on value resulting from the original project." The Highway Commissioner excepted to the ruling of the court.

Commissioners were appointed and summoned. Evidence was submitted to them limited to the value of the property in its enhanced state as of the date of taking. The commissioners returned an award in the sum of $23,918.00. The Highway Commissioner then proffered evidence that without enhancement, the land was worth only $10,399.00. The trial court confirmed the condemnation commissioners' award of the higher amount, and the Highway Commissioner was granted a writ of error.

The evidence showed that the parcels taken from the landowner were needed, along with other land in the area, for the reconstruction and improvement of an interchange of Shirley Highway, or Interstate Route 95, and Edsall Road, or Route 648, in Fairfax

County. Shirley Highway runs north and south, and Edsall Road runs east and west. Prior to the reconstruction, Edsall Road curved to the south as it approached Shirley Highway and crossed the latter roadway by means of an overpass. In the reconstruction, Edsall Road was straightened and widened and relocated to the north of the old road, crossing Shirley Highway by means of a new overpass. However, the old road was not closed, but was itself improved to provide access to an area of industrial property located to the south of the road.

Prior to the reconstruction, the landowner's property consisted of a single tract located on the north side of Edsall Road. The new Edsall Road bisected the property, leaving the landowner with one parcel on the north side and one parcel on the south side of the new road. Another new roadway crossed the southwest corner of the landowner's property, connecting the new Edsall Road with the old.

Prior to approving the design for the project, the Highway Commissioner had conferred with officials of Atlantic Research Corporation, the owner of a large plant located to the north of Edsall Road near the interchange. Atlantic Research "had indicated from the very start that [it] felt that [its] access was inadequate" and had suggested certain changes it desired to have made in the project. However, the Highway Commissioner rejected the proposals for change advanced by Atlantic Research because the proposals were "against Highway Department policy."

The project design was officially approved as of December 3, 1963, resulting in the taking of the landowner's property pursuant to the first certificate of deposit filed October 9, 1964, by the Highway Commissioner.

In the early part of 1965, more than a year after the design was approved, Atlantic Research and several other owners "of industrial interests" in the area joined together and employed a private consulting engineering firm. The firm "prepared a study on the industrial characteristics . . . analyzed the traffic that would be using the entrances in the area . . . projected this traffic ahead to 1985 and submitted plans and reports" indicating that the Highway Commissioner's "design was inadequate."

As a result of the reports submitted to it by the engineering firm, the Highway Department conducted its own investigation and decided that "additional roadway width" was needed. The project design was revised in "the latter part of March, 1965, or April," resulting in the taking of the second parcel of the landowner's property

pursuant to the certificate filed February 15, 1966, by the Highway Commissioner.

The property covered by the second certificate of deposit was taken from the remaining parcel of the landowner located on the south side of new Edsall Road. The new property was used to provide additional width for the roadway connecting the new Edsall Road with the old. Pursuant to the revised project design, three traffic lanes were constructed and two islands were installed to channelize traffic using the connecting roadway. Prior to the design change, the connecting roadway was a simple, two-lane crossover.

The Highway Commissioner contends that the landowner was not entitled to be compensated for the enhancement in value of the second parcel because "there was an open and notorious designation of the probable area of condemnation for the project in question." The second parcel fell within that probable area of condemnation, the Commissioner says, since its taking was in connection with the same project for which the first parcel was acquired. Therefore, the Commissioner concludes, "any enhancement in value as the result of this project should not have been considered in the trial for the acquisition of the second parcel of land from the landowner."

The landowner contends, on the other hand, that he was entitled to be compensated for the enhancement in value of the second parcel because the evidence before the trial court showed that "acquisition of the additional area was [not] considered likely at the inception of the project." That being so, the landowner says, the second parcel was not in "the probable area of condemnation" and was not subject, therefore, to the general rule that "enhancement which may result from the project for which the land is to be acquired must be excluded."

Both parties urge us to apply the principles enunciated in the cases of *United States* v. *Miller*, 317 U. S. 369, 63 S. Ct. 276, 87 L. ed. 336 (1943), and *United States* v. *Crance*, 341 F. 2d 161 (1965), in disposing of the question before us. And the parties note that we gave tacit approval to those principles when we cited the *Miller* case in *Edwards* v. *Highway Commissioner*, 205 Va. 734, 738, 139 S. E. 2d 845, 848 (1965).

The *Edwards* case did not present the question now raised. We believe, however, that the rule laid down in the *Miller* case, and followed in the *Crance* case, is applicable to the problem at hand.

In the *Miller* case, the United States Government undertook a project to construct a dam on the Sacramento River in California.

The project contemplated the flooding of an area occupied by the tracks of the Central Pacific Railroad and the relocation of the railroad right-of-way. The Government sought to condemn the lands of Miller and others for the relocation of the right-of-way. The landowners claimed that they were entitled to the enhancement in value of their property resulting from the Government's authorization of the project. The trial court ruled against the landowners' position, but the Circuit Court of Appeals reversed. The Supreme Court, in reversing the Circuit Court of Appeals, stated:

"The question . . . is whether the respondents' lands were probably within the scope of the project from the time the Government was committed to it. If they were not, but were merely adjacent lands, the subsequent enlargement of the project to include them ought not to deprive the respondents of the value added in the meantime by the proximity of the improvement. If, on the other hand, they were, the Government ought not to pay any increase in value arising from the known fact that the lands probably would be condemned. . . ." 87 L. ed., at 344.

\* \* \*

". . . The project, from the date of its final and definite authorization in August 1937, included the relocation of the railroad right-of-way, and one probable route was marked out over the respondents' lands. This being so, it was proper to tell the jury that the respondents were entitled to no increase in value arising after August 1937 because of the likelihood of the taking of their property. . . ." 87 L. ed., at 345.

In *United States* v. *Crance, supra,* 341 F. 2d 161, the United States Government undertook the construction of the Pomme de Terre Dam and Reservoir in Missouri. The Government acquired by purchase a portion of a tract of 132.5 acres owned by Crance, such portion to be included in the reservoir. Later, the Government sought to condemn an additional 35 acres of the Crance tract for development of a recreational area. The Crance owners contended that they were entitled to the enhancement in value accruing to the 35-acre parcel because of its proximity to the reservoir. The District Court ruled in favor of the landowners, and the Government appealed. The appellate court reversed, stating:

"The significant factor here is that this project contemplated recreational areas from its very inception and certainly property

lying beyond a perimeter of the reservoir would probably be incorporated for recreational purposes if the land acquired for the reservoir alone was not also sufficient for recreational utilization. Since the Crance property abutted the reservoir line, it was within the sphere of probable acquisition for recreational use. . . ." 341 F. 2d, at 165.

\* \* \*

". . . The property condemned was taken during construction from an area of probable acquisition for fulfillment of a recreational purpose which was within the scope of the project from its inception." 341 F. 2d, at 166.

Thus, the rule established by the foregoing cases is one of probability. As applied to the situation before us, the rule of decision may be stated to be that if the taking of the second parcel of the landowner's property appeared reasonably probable from the inception of the highway project, then the enhancement in value of that parcel resulting from the project should not have been considered. Conversely, if the second parcel was not within the scope of the original project, then its taking was not reasonably probable, and the factor of enhancement in value was properly submitted to the condemnation commissioners.

The design approved by the Highway Department on December 3, 1963, resulting in the taking of the first parcel from the landowner, was a specific delineation of the area required for the project contemplated by the Department. On the exhibit setting forth the design, the words "Limit of Construction," "Prop. (proposed) R/W and Limited Access Line," "Take," and "Rem. (remainder)" appeared several times in relation to the landowner's property and that of others shown on the exhibit. The boundaries of the parcel acquired from the landowner were clearly marked and were shown by metes and bounds. What was taken later as the second parcel was shown merely as remaining land.

The oral testimony submitted to the trial court showed that the project design was "officially . . . set" as of December 3, 1963, such approval coming after the rejection of proposals for change sought by Atlantic Research. The road design engineer of the Highway Department, who supervised the design work, admitted under cross-examination that when he approved the original plans, "there wasn't the slightest thought" in his mind that the change ultimately made

would be required. In fact, the witness said that he "did not contemplate any change." And he conceded that the "changes that actually occurred" were not conceived until "some time after the beginning of the year 1965," or more than a year after the design was "officially . . . set."

The evidence before the trial court also showed that when the right-of-way agent of the Highway Department negotiated with the landowner for acquisition of the first parcel, on the basis of the original design, the landowner was told that he "would be left with two very desirable pieces of property" after his original tract was bisected by new Edsall Road. That had, at least, the effect of lulling the landowner into the belief that no additional land would be required from him.

It is clear from the record before us that when the original project design was approved on December 3, 1963, it was not contemplated that the second parcel of land would be required from the landowner for completion of the project. It is equally clear that the changes in design, which resulted in the acquisition of the second parcel, were prompted by actions taken by others owning industrial interests in the area. Those other owners were able, obviously, to show the Highway Department that it had provided inadequate access to their property, a result not reasonably probable, we take it, in the ordinary case.

Under these circumstances, the trial court was justified in holding, as it did, that the additional property taken from the landowner was not "in an area of probable construction within the scope of the present project from its inception." It was not error, therefore, for the court to permit the condemnation commissioners to consider the enhancement of value of the second parcel resulting from the project.

The judgment appealed from will be affirmed.

*Affirmed.*