COMMONWEALTH TRANSPORTATION COMMISSIONER

V.

WILLIAM B. DUVAL, ET AL.

Record No. 880595

November 10, 1989

Present: Carrico, C.J., Compton, Stephenson, Russell, Thomas,* Whiting, and Lacy, JJ.

---

\* Justice Thomas participated in the hearing and decision of this case prior to the effective date of his resignation, November 1, 1989.

*John J. Beall, Jr., Senior Assistant Attorney General (Mary Sue Terry, Attorney General; Walter A. McFarlane, Deputy Attorney General; Barrett E. Pope; Richard Locke, Mezzullo, McCandlish & Framme*, on brief), for appellant.
*Edward E. Willey, Jr.* for appellees.

Justice Whiting delivered the opinion of the Court.

In this appeal of a condemnation award, we decide whether two prospective commissioners should have been disqualified for cause. We also consider an instruction dealing with a highway project's impact upon the value of the property to be condemned as a part of that project.

On May 20, 1985 (the valuation date), the State Highway and Transportation Commissioner, now the Commonwealth Transportation Commissioner (the Commissioner), recorded a certificate of deposit and, pursuant to Code § 33.1-122, thereby acquired 11.983 acres (the property) from a tract of approximately 200 acres in Chesterfield County. On that date, the 200 acres were owned by J.J. Jewett and T.S. Winston, III, Trustees. The property was to be used as part of an extension of the Powhite Parkway (the project), beginning at its intersection with Chippenham Parkway and running in a southwesterly direction to Route 288.

At the time the certificate was filed, William B. DuVal and Jean H. DuVal (collectively DuVal) had contracted to purchase the entire 200-acre tract. In August 1985, the trustees conveyed it to DuVal. The Commissioner filed the condemnation petition on November 17, 1986.

The 200 acres were situated south of the proposed extension of the Powhite Parkway and north of Genito Road. The property extended across the entire northern boundary of the 200 acres, between the two properties adjoining it on its eastern and western sides. All parties agreed that there was no damage to the remaining property.

Although DuVal's property was zoned for single-family residential use on the valuation date, the properties in the Genito Road area were used for commercial and industrial purposes. On the north side of Genito Road, the eastern side of the 200 acres was adjoined by a building supply business, and its western side was adjoined by an automobile speedway. An auto parts business was located immediately west of the speedway. A county landfill was situated on the south side of Genito Road within sight of DuVal's property, and there was a quarry just south of the landfill.

Two residential subdivisions on the eastern and western sides of the 200 acres were located an undisclosed distance north of Genito Road. Those subdivisions apparently extended in a northerly direction to the proposed extension of the Powhite Parkway.

Prior to October 29, 1987, pursuant to the provisions of Code § 25-46.20, the Commissioner and DuVal each sent the court a list of six freeholders who were residents of Chesterfield County. On October 29, the court selected nine of those persons who appeared for examination, of whom five were selected to be commissioners.

During *voir dire* examination, one of the prospective commissioners, Robert S. Vukmer, testified that he had an interest in real estate in Newport News and York County which the Commissioner had "taken steps to condemn, although we are disputing value." Charles E. Savage, another prospective commissioner, testified that before he was summoned as a commissioner, one of DuVal's attorneys asked him if he "would be willing to serve as Commissioner in a land dispute. That's all that was said."

The court denied the Commissioner's motions to disqualify each of these proposed commissioners for cause. Thereafter, the Commissioner struck Vukmer from the panel, and Savage served as one of the five commissioners.

Joseph B. Call, III, an expert appraiser called by the Commissioner, testified that on the valuation date, absent the impact of the project, the highest and best use of the property would have been for single-family residential purposes; however, because of the project, its highest and best use changed to light industrial development. DuVal, however, testified that the project did not influence this change in highest and best use of the property. He contended that development of the area near Genito Road had changed the prospects for rezoning, as well as the highest and best use of his property to light industrial, without regard to the project. The evidence of both parties showed that the value of the property would be considerably higher if its highest and best use was light industrial use, rather than single-family residential development.

Instruction 9, dealing with this issue, reads as follows:

If you find that the subject property's highest and best use had changed by May 25, 1985, from single family residential development to light industrial development due solely to the road improvement project which condemned the 11.983 acres, then you cannot consider the subject property's highest and best use as being light industrial development.

The Commissioner tendered this instruction without the word "solely." DuVal objected to the instruction, but when the court indicated that it would be granted, DuVal asked for the insertion of the word "solely" in the instruction. The court granted the instruction with the insertion, to which the Commissioner objected. DuVal maintained his original objection to the balance of the instruction but does not assign cross-error to support his objection.

## I.

■ We have decided a number of cases dealing with the disqualification of condemnation commissioners for cause. In *May* v. *Crockett*, 202 Va. 438, 117 S.E.2d 648 (1961), we held that a commissioner in a highway condemnation proceeding should have been disqualified for cause. This was because of his interests in two parcels adjoining the property to be condemned, one of which was the subject of a pending condemnation proceeding relating to the same project. In dealing with the commissioner's disqualification, we said:

> The maintenance of public confidence in the integrity of reports of commissioners, acting under the statute in the assessment of damages in condemnation proceedings, who are in truth in effect performing the duties of a jury in an *ad quod damnum* proceeding, is of such importance that the same rule applicable to juries should be applied; and such reports should be kept free from the suspicion that the commissioners may have been improperly influenced.

> Every precaution should be taken by the commissioners and by the courts to preserve public confidence in the findings of commissioners.

202 Va. at 440, 117 S.E 2d at 649 (citations omitted).
■ Two recent decisions also involve commissioner disqualification for bias or interest. In both, we upheld the trial court's exercise of discretion in refusing to remove challenged commissioners for cause; we concluded that there was failure to show that the business relationships between the challenged commissioners and a litigant involved financial interests related to issues the commissioners would decide. *State Hwy. Comm'r* v. *Cardinal Realty Co.*, 232 Va. 434, 438, 350 S.E.2d 660, 662 (1986); *State Highway and Trans. Comm'r.* v. *Dennison*, 231 Va. 239, 243, 343 S.E.2d

324, 327 (1986). Nevertheless, we affirmed the principles expressed in *Crockett* by stating that "[t]he eminent domain statutes . . . must be administered in a manner which promotes confidence in the integrity of the process." *Dennison*, 231 Va. at 242, 343 S.E.2d at 326.

■ In this case, the dispute with the Commissioner over the value of Vukmer's property in another county might raise a question of his impartiality in deciding the value of the property in issue. Although there is no indication in the record that Vukmer's judgment would have been affected, public confidence in this and any condemnation award is of such paramount importance that he and any other prospective commissioner similarly situated should be excused from the panel for cause.

Next, we deal with Savage's possible disqualification. In *Va.-Western Power Co.* v. *Kessinger*, 122 Va. 135, 146, 94 S.E. 186, 190 (1917), we said that

> the practice of counsel in a case notifying the commissioners of their appointment in condemnation proceedings should be discontinued. It is a position in which counsel should not be put or put themselves. It is a difficult position to fill with absolute absence of some expression which may have or seem to have the ulterior object or effect of inducing a special feeling of favor on the part of the commissioner communicated with toward counsel having the communication and his client, especially when the communication is verbal, and only in a less degree when it is in writing.

Moreover, in *Crockett*, in giving reasons for the disqualification of one of the commissioners, we cited *Kessinger* and noted that the commissioner in question had "been approached by the condemnees and asked to serve as a commissioner." 202 Va. at 440, 117 S.E.2d at 649.

In 1968, the condemnation statute was amended to provide for a different method of selecting commissioners. If the parties cannot agree on the panel's members, "then each party shall present to the court a list containing the names of six freeholders from which list [sic] the court shall select the names of nine persons to be summoned as commissioners." Code § 25-46.20 (amended in pertinent part by Acts 1968, c. 535). This prov-

ision was enacted after *Crockett* and *Kessinger* had been decided.

■ DuVal argues that this provision "put the commissioner selection process in the hands of the parties to the condemnation." We do not agree. The statute limits their role to the nomination of commissioners. If the legislature had intended the parties to contact prospective nominees before submitting their names, thus modifying the effect of our rulings in *Crockett* and *Kessinger*, we believe it would have done so expressly. Although the record discloses nothing improper beyond mere contact by counsel, for the reasons expressed in *Crockett*, and because any such contact by any party or his representative presents the possibility of abuse, we conclude that the contact should have resulted in Savage's disqualification for cause.

For the foregoing reasons, we find that the trial court erred in denying the Commissioner's motion to disqualify both prospective commissioners for cause.

## II.

■ Instruction 9 informed the commissioners that if the change in the highest and best use of DuVal's property was "due solely to" the project, they could not consider the change. The Commissioner argues that the insertion of the word "solely" improperly required him "to prove the project was the only, exclusive reason for the shift in the property's highest and best use." We agree with the Commissioner; insofar as the change in use affects the value of the property, DuVal is not entitled to any increase in its value caused, in whole or in part, by the project. *See Highway Commissioner* v. *Bell*, 209 Va. 769, 773-74, 167 S.E.2d 127, 130 (1969); *Edwards* v. *Highway Commissioner*, 205 Va. 734, 738, 139 S.E.2d 845, 848 (1965).

The difficulty is that the instruction, as tendered by the Commissioner, was ambiguous and could have been so construed without the addition of the word "solely." The words "due to" refer to causation. Without further definition of the expression "due to," it could be interpreted as referring to the project as the sole cause, or as one of several causes, for the change in the use-classification of DuVal's property. If the instruction had been granted as originally tendered, DuVal is correct in his contention that the commissioners could have adopted the former construction of the "due

to" expression that was merely clarified by his insertion of the word "solely."

Because the instruction as tendered and the instruction as amended are incorrect statements of the law, and the issue will arise again on remand, we will indicate what should be considered in preparing an instruction on this issue. The word "solely" should be deleted and the words "in whole or in part" should be inserted after the word "due." Appropriate language should explain that if the change in the property's highest and best use came about for reasons unrelated to the project, as DuVal testified, the property owner is entitled to the benefit of the property's consequent increase in value.

For all of the foregoing reasons, we will reverse the judgment and remand the case for further proceedings consistent with this opinion.

*Reversed and remanded.*