## COMMONWEALTH TRANSPORTATION COMMISSIONER OF VIRGINIA

### v.

## MARGARET T. THOMPSON

Record No. 940782

March 3, 1995

Present: All the Justices

*John J. Beall, Jr., Senior Assistant Attorney General (James S. Gilmore, III, Attorney General; Richard L. Walton, Jr., Senior Assistant Attorney General; Howard S. Marley; Beddow, Marley, Burgess & Associates*, on brief), for appellant.

*John E. Dodson (Gordon, Dodson & Gordon*, on brief), for appellee.

JUSTICE HASSELL delivered the opinion of the Court.

This eminent domain proceeding involves issues relating to: the exercise of peremptory strikes of commissioners allegedly based upon race; and damages to the landowner's residual property.

The Commonwealth Transportation Commissioner of Virginia (condemnor) filed a certificate pursuant to Code § 33.1-121 to

acquire a portion of residential property owned by Margaret T. Thompson. The land subject to the take was necessary for the improvement of Courthouse Road in Chesterfield County.

Nine condemnation commissioners were summoned and seated in accordance with Title 25 of the Code. After the parties conducted their respective *voir dire* of the commissioners, the landowner's counsel exercised his peremptory strikes to remove the only two black commissioners, Charles R. Turner, Jr., and Regina D. Scott. After counsel had exercised their peremptory strikes and before the remaining five commissioners were sworn, counsel for the condemnor, relying upon *Batson* v. *Kentucky*, 476 U.S. 79 (1986), requested that the trial court require the landowner's counsel to explain why he had removed the two black commissioners. The landowner's counsel responded:

> If Your Honor please, for the record, upon inquiry I stated that my reason for doing it was strategic, tactical and instinctive, and it still is. And I would state for the record it had not one scintilla of racial motivation in it.

The trial court denied the condemnor's motion to impanel a new commission.

At trial, the parties agreed that the landowner's septic system was damaged by the inclusion of a portion of the drainage field in the take. The condemnor presented evidence that this damage could be repaired by installing a new drain field at a cost of $3,250. The landowner, however, presented evidence that she did not desire a new drain field, but, rather, she wanted to connect her home to Chesterfield County's public sewer system at a cost of $14,370.

The trial court denied the condemnor's motion to strike that portion of the landowner's evidence that related to the costs of connecting the house to the public sewer system. The commissioners awarded the landowner $54,362, and the trial court entered a judgment confirming the award. The condemnor appeals.

Relying upon *Batson*, the condemnor argues that the landowner violated the Equal Protection Clause of the United States Constitution by exercising her peremptory strikes to remove the black commissioners from the panel because of their race. The landowner argues that *Batson* does not apply to condemnation commissioners and, further, that her exercise of her peremptory

strikes to remove the prospective black commissioners "for 'strategic, tactical and instinctive' reasons did not violate the equal protection rights of the excluded commissioners, guaranteed to them by the United States Constitution." We disagree with the landowner.

■ The Supreme Court held in *Batson* that the Equal Protection Clause does not permit a prosecutor to exercise a peremptory strike to remove a prospective juror solely because of the prospective juror's race. *Batson*, 476 U.S. at 89. The Supreme Court extended the *Batson* rule to civil cases in *Edmonson* v. *Leesville Concrete Company, Inc.*, 500 U.S. 614 (1991).

■ We find no merit in the landowner's argument that *Batson* does not apply to the exercise of peremptory strikes to remove condemnation commissioners. The purpose of the commission in an eminent domain proceeding is to determine the issue of just compensation. *See* Code § 25-46.19. The commissioners, like a jury, consider the relevant evidence, assess the credibility of witnesses, and make factual determinations, including the appropriate damages.

■ Even though the role of the commissioners differs somewhat from that of a jury, *Hamer* v. *School Board of the City of Chesapeake*, 240 Va. 66, 72-73, 393 S.E.2d 623, 627 (1990), we are of opinion that the maintenance of public confidence in the integrity of reports of commissioners requires that commissioners not be removed for improper reasons such as race. *See Collins* v. *Pulaski County*, 201 Va. 164, 169, 110 S.E.2d 184, 187-88 (1959); *Va.-Western Power Co.* v. *Kessinger*, 122 Va. 135, 146, 94 S.E. 186, 190 (1917); *New River R.R. Co.* v. *Honaker*, 119 Va. 641, 654-55, 89 S.E. 960, 964 (1916).* As the Supreme Court observed in *Edmonson*, "[r]ace discrimination within the courtroom raises serious questions as to the fairness of the proceedings conducted there. Racial bias mars the integrity of the judicial system and prevents the idea of democratic government from becoming a reality." 500 U.S. at 628.

■ We now consider whether the landowner violated the *Batson* rule. The Supreme Court articulated the test that we must apply here:

---

* We simply find no merit in the landowner's argument that the Transportation Commissioner lacked standing to assert a *Batson* motion. *See Georgia* v. *McCollum*, ____ U.S. ____, 112 S.Ct. 2348, 2357 (1992) (state has standing to raise *Batson* challenge).

To establish . . . a case [of purposeful discrimination in the selection of the jury], the [moving party] first must show that he is a member of a cognizable racial group, . . . and that the [opposing party] has exercised peremptory challenges to remove from the venire members of the [moving party's] race. Second, the [moving party] is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits "those to discriminate who are of a mind to discriminate." . . . Finally, the [moving party] must show that these facts and any other relevant circumstances raise an inference that the [opposing party] used that practice to exclude the veniremen from the . . . jury on account of their race. This combination of factors in the empaneling of the . . . jury, as in the selection of the venire, raises the necessary inference of purposeful discrimination.

. . . .

Once the [moving party] makes a *prima facie* showing, the burden shifts to the [opposing party] to come forward with a neutral explanation for challenging black jurors.

*Batson*, 476 U.S. at 96-97 (citations omitted); *accord Hill* v. *Berry*, 247 Va. 271, 274-75, 441 S.E.2d 6, 8 (1994); *Faison* v. *Hudson*, 243 Va. 397, 401-02, 417 S.E.2d 305, 307-08 (1992).

In *Hill*, we considered whether a litigant exercised his peremptory strikes to exclude black citizens from the jury in violation of the Equal Protection Clause and the rule pronounced in *Batson*. There, the defendant exercised his peremptory strikes to remove all the black citizens from the venire. The plaintiff objected to the defendant's use of his peremptory strikes to remove the black veniremen, and the court requested that defendant's counsel state the reasons he had removed the veniremen. The defendant's counsel responded:

Well, Your Honor, [the reasons] are based on just intuitive reasons, the way people look, they — just a sense. Some of it is based on, on, on their occupations. I don't, I don't believe I can state any more than that without going into, into my trial strategy, Your Honor.

*Hill*, 247 Va. at 273, 441 S.E.2d at 7. We held that the defense counsel's explanation, "just intuitive reasons, the way people look, they — just a sense," was not a racially-neutral reason to remove a venireman from the venire.

■■■ Applying *Batson* and *Hill*, we hold that the condemnor established a *prima facie* case of purposeful discrimination because the record reveals that the landowner's counsel removed all the black commissioners. The burden then shifted to counsel for the landowner to present a racially-neutral explanation for removing the black commissioners. Here, as in *Hill*, the explanation offered by the landowner's counsel was not racially neutral. We find no difference between the explanation for removing the veniremen offered in *Hill* and the explanation articulated by the landowner's counsel. The explanation, "I stated that my reason for doing it was strategic, tactical and instinctive," is vague, ambiguous, and conclusional, and is insufficient to rebut a *prima facie* case of racial discrimination in the removal of the commissioners.

Because this case will be remanded to the trial court, we must now consider whether the trial court erred by permitting the landowner to introduce evidence of the costs of connecting her property to the public sewer system. The condemnor argues that under the facts and circumstances of this case, the landowner is only entitled to recover for the costs of the installation of a new drainage field. The landowner, however, asserts that she is entitled to the costs of connection to the public sanitary sewer because the condemnor is unable to guarantee that the replacement drain field will work. We disagree with the landowner.

The undisputed testimony at trial reveals that the septic system could be repaired by creating a new drain field. Indeed, the County has issued a permit for the construction of a septic system on the landowner's property. Dennis D. Capor, an environmental health specialist for the Chesterfield County Health Department who testified on behalf of the landowner, inspected the landowner's property and found nothing to suggest that the repairs to the septic system would not work. We observe that even though Capor testified that the issuance of a permit for a septic system does not guarantee that the replacement will work, the landowner presented no evidence to rebut Capor's testimony that the repairs could be implemented.

■■■ Simply stated, the landowner wants a guarantee that her new septic system will work when, in fact, she has no such guar-

antee on her existing system. A landowner in a condemnation proceeding is not entitled to compensation that makes the residual property more valuable than it was before the condemnation. *See Dressler* v. *City of Covington,* 208 Va. 520, 522-24, 158 S.E.2d 660, 662-63 (1968). Hence, under these circumstances, the costs of connection to the public sewer system were inappropriate elements of damage and improperly admitted in evidence.

Accordingly, we will reverse the judgment confirming the award, and we will remand the cause for a new trial.

*Reversed and remanded.*